[S. F. No. 14719. In Bank.—October 30, 1933.]

EMMA OTEY, Respondent, v. CARMEL SANITARY DISTRICT, Appellant.

Argyll Campbell and Wyckoff, Gardner & Parker for Appellant.

Silas W. Mack and John Thompson for Respondent.

WASTE, C. J.—Defendant appeals from a judgment quieting plaintiff's title to certain beach lands at and near the mouth of the Carmel River in Monterey County. Plaintiff claims title by accession or accretion to the upland while the defendant claims through a legislative grant of tideland. The trial court found in favor of the plaintiff and gave judgment accordingly.

The principal question on this appeal has to do with the sufficiency of the evidence to support the trial court's findings. Section 1014 of the Civil Code declares that "Where, from natural causes, land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank." Appellant contends that the record is destitute of evidence tending to show that the land here in dispute formed "from natural causes" and "by imperceptible degrees" as required by the code section. It urges that "the accumulation in the case at bar is not of solid material. It is loose sand in the bed of the river, without vegetation, shifting with the changes of tide and wind. The accumulation is no permanent part of the land, but is a mere drift which at the caprice of the wind and tide changes constantly in breadth and depth. Such drifts are not accretion."

Examination of the record discloses that defendant introduced evidence tending to define and characterize the land here in dispute as above described. However, in view of the lower court's findings we must, under well-settled principles, accept plaintiff's evidence which very definitely indicates that the land involved falls within the code definition of alluvion.

Carmel Martin, called upon a previous trial of the cause and whose testimony was admitted at the second trial upon stipulation of the parties, testified, in substance, that he was born near the mouth of the Carmel River in 1879; that he has always lived there except when away at school; that there is more sand now in the Otey property than there was in 1907; that it is higher up at the northern boundary and wider on the east and west; that the expanse of sand is

greater; that the dunes along the northern boundary have been gradually getting higher all the years; that after the sand lies there a while the brush starts to work through and the south winds start the sand moving; that it hits the brush and is precipitated, and the following year the brush reaches up through the sand and comes up above it; that that practice goes on year after year; that this is not true of the Otey property; that there is no brush on that, but that this practice takes place there because the winds blowing from the south start the sand moving and as it drifts up it deposits sand all along the line; that there is a gradual elevation all the way along the river to the top of the sand dune.

J. H. Stewart, whose previous testimony was also admitted upon stipulation, asserted that he had lived in Carmel Valley for fifty-nine years; that there has been little change in the mouth of the river in the last fifty-nine years; that sometimes it runs north and sometimes it runs a little south, but it has been for the most part in the same place it is now for ·the last fifty-nine years; that three or four times it went out well to the north; that it has been opened many times artificially; that the Otey place looked much as it does now fifty-nine years ago, but not so much sand; that there has been a gradual accretion during the years; that a hill has been raised north of the septic tank; that the wind has rolled up the sand and it stops on the brush; that the wind and sand have been raising that hill continuously since he was a boy; that there is more sand; that every year the sand-hill with the brush is higher.

Others testified substantially to the same effect.

In addition, the trial court, by consent of the parties, went upon and viewed the lands and premises in dispute. In *Hatton* v. *Gregg*, 4 Cal. App. 537, 540–542 [88 Pac. 592], wherein plaintiff's title was quieted to an accretion to certain lands adjacent and riparian to the Carmel River, the river involved in the present case, it is held that information obtained from a view of the premises "is independent evidence that can be taken into consideration in determining the issue of the case". In that case, as here, it was urged that the trier of the fact, from the nature of things, could not, from such examination of the premises, "find that the land in dispute had been formed from

natural causes, by imperceptible degrees, by the accumulation of materials or by the recession of the bank of Carmel river''. The contention was found to be without merit, it being declared that the court ''could, upon a view of the premises, not only verify the evidence as to the character of the land in dispute as to being a sedimentary, sandy loam, but could observe the slope of the land from the original boundary of plaintiff's land to the river, and the character and relative age of the brush or other vegetation upon the land, and any other characteristics tending to throw light upon the manner of its formation. From such facts . . . the court might reasonably conclude that the land in dispute has been formed by natural causes, by imperceptible degrees, by the accumulation of materials, and by the recession of the river''. We find nothing in *Fendley* v. *City of Anaheim*, 110 Cal. App. 731 [294 Pac. 769], opposed to this conclusion.

We are not inclined to accept defendant's theory that the deposit did not result from natural causes but rather from certain artificial agencies located in the immediate vicinity. The septic tank and bunker to which defendant refers us had no existence prior to 1912 and 1914 respectively. Plaintiff's evidence, as already shown, goes back to 1873 and indicates that there has been but slight change in the premises in the past twenty years and that such change as has occurred has been from natural causes and by imperceptible degrees. Moreover, the court below, when viewing the premises, was in a position to readily ascertain and determine what effect, if any, artificial agencies had upon the change in the premises.

In its judgment quieting plaintiff's title, the court below excepted any and all land lying below ordinary high-water mark. That portion, if any, lying below ordinary high-water mark was awarded to defendant, as successor in interest of the state, pursuant to section 670 of the Civil Code. The fact that the ''ordinary high water mark'' is not definitely fixed in the judgment does not render it uncertain and erroneous. Ordinary high-water mark is the limit reached by the neap or twice-a-day tides (*Forgeus* v. *County of Santa Cruz*, 24 Cal. App. 193, 195 [140 Pac. 1092]) and is readily ascertainable at any given time.

Under section 3538 of the Civil Code that is certain which can be made certain.

We have examined other points and contentions made by the parties and find nothing requiring further discussion. What we have said sufficiently disposes of the cause. Examination of the record satisfies us that· the judgment is eminently proper and it is affirmed.

Thompson, J., Curtis, J., Langdon, J., Preston, J., and Seawell, J., concurred.

Rehearing denied.