[S. F. No. 16055. In Bank.—October 28, 1938.]

GIBSON PROPERTIES COMPANY (a Corporation) et al., Appellants, v. CITY OF OAKLAND (a Municipal Corporation), Respondent.

Melville C. McDonough and Raymond C. Gericke for Appellants.

F. Bert Fernhoff, City Attorney, and Hilton J. Melby, Assistant City Attorney, for Respondent.

CURTIS, J.—The following statement of facts upon which this action is based is expressly approved by the appellants, and impliedly by the respondent. We, therefore, accept it as the true factual situation of the parties in this action.

This appeal was taken from a judgment for the defendant in an action at law for damages claimed because of changes in the design and construction of a building made in anticipation that street-opening proceedings, later abandoned, would be carried through to completion.

In March of 1926 the appellant Gibson Properties Company had acquired title to an irregularly shaped piece of land in Oakland within the block bounded on the west by Franklin Street, on the south by Water Street, on the east by Webster Street and on the north by First Street, upon which it proposed to erect a three-story concrete warehouse for the appellant Lawrence Warehouse Company. On March 15, 1926, the Properties Company made a lease to the Warehouse Company of the proposed warehouse, according to plans and specifications then prepared, for a term ending October 15, 1946, for a total rental of $900,000. About this time the Properties Company was granted a building permit, and on April 2, 1926, it made a contract for the construction of the warehouse for $296,000, which was to cover the entire area owned by the Properties Company, the northerly line of which, extending for 100 feet was the southerly line of First Street. On April 15, 1926, a letter was written by the commissioner of public works, referring to the fact that a building permit had been issued, indicating that street-widening proceedings were going to be started and that the street to be opened would impinge upon the Properties Company lot and suggesting "that before definite plans are made for any construction it would be advantageous to yourselves and the City if a conference could be arranged". Work was, nevertheless, started on the warehouse. On June 17, 1926, the respondent by ordinance, declared its intention to widen First Street for the two blocks from Broadway to Webster Street, under the Street Opening Act of 1903, which opening, the ordinance showed, would add to the width of First Street

by taking 20 feet off the northerly side of the two blocks in question. The Properties Company had designed on the northerly 20 feet of its lot and within the walls a spur track so depressed that the floor of a railroad car would be level with the floor of the warehouse. As soon as the ordinance of intention was passed, the respondent's commissioner of public works notified the Properties Company in writing of the passage, and ordered it to cease and desist from any building operations upon the 20-foot strip, which order was at once obeyed. Before the ordinance had been passed the foundation of the north wall of the building had been laid along the south line of First Street, forms for the pouring of the concrete for the entire height of the building's north wall had been made, the excavation for the depressed track had been dug, and certain other work had been done. Appellants then had their plans redrawn, setting the north wall back, or southerly, 20 feet from its original location, setting the elevator pit, likewise, 20 feet back, and eliminating the depressed track. The cost of these changes and the redesigning of the building was $5,696.60, which the court found was the reasonable value of that work. As reconstructed the building occupied 98.4 per cent of the ground area and contained 95.35 per cent of the floor space originally planned. On September 16, 1926, an ordinance was adopted ordering the widening of First Street, in the manner already indicated, and directing condemnation proceedings. A condemnation suit was filed on October 29, 1926, and eventually went to trial, resulting in an interlocutory judgment on July 9, 1929, awarding the appellants $33,997.

On September 15, 1931, the respondent adopted an ordinance repealing the ordinance of intention and all proceedings thereunder, and on December 11, 1931, filed in the condemnation proceedings a notice of abandonment and request for dismissal. On December 16, 1931, the court dismissed the condemnation suit.

May 12, 1933, the complaint was filed in the instant case alleging most of the facts just stated, and claiming general damages in the sum of $55,392, and special damages of $5,696.60 for the Properties Company and $24,608.93 for the Warehouse Company.

These facts were in all material respects embodied in the findings of the court. In addition thereto, the court found that plaintiffs' allegation as to damages contained in paragraph XX of their second amended complaint was untrue. Paragraph XX of said complaint was as follows:

"That on the 22nd day of June, 1926, the date of the first publication of the notice of intention to condemn, the market value of said parcel of land described in paragraph IV hereof with the completed improvements contemplated by said plaintiff was $450,000; that the market value of said land and of said improvement as constructed by the plaintiff after the acts hereinbefore in this complaint alleged, was and is $370,000; that the acts and conduct of the defendant as hereinbefore alleged damaged plaintiff Gibson Properties Company in the sum of $80,000. Plaintiffs are informed and believe and therefore allege the fact to be that the expense of restoring said building to its original condition as planned would reasonably cost in excess of the sum of $80,000."

It further made the following explicit finding (finding 9) :

"It is true that in June, 1926, the fair market value of said property described in said Second Amended Complaint, improved as it was originally contemplated, was the sum of $335,000.00; that it is true that in June, 1926, the fair market value of said property improved pursuant to its altered plan was the sum of $335,000.00."

Plaintiffs contend that the mere finding of the court that paragraph XX of the amended complaint is untrue is a typical case of a negative pregnant, and establishes nothing. Conceding this statement to be true, it must be admitted that the facts found by the court, and expressly set forth in finding 9 are utterly inconsistent with the allegations of paragraph XX of said amended complaint. Plaintiffs alleged that the market value of said property with the completed improvements contemplated by the plaintiffs was the sum of $450,000. The court found that the value of said property improved as originally contemplated was $335,000. Plaintiffs alleged that the market value of said property as constructed was the sum of $370,000. The court found that said property improved pursuant to its altered plan was the sum of $335,000. The court by these findings as to the market value of said property if improved as contemplated, and as im-

proved pursuant to the altered plan, impliedly found that the allegations in paragraph XX of plaintiffs' second amended complaint as to the market value of said property under the two conditions mentioned therein were not true. If these findings are supported by the evidence, they in turn support the conclusion of the trial court that the plaintiffs sustained no damage by any action of the defendant whereby they were induced or compelled to alter their original plans for the construction of the building upon said real property.

Plaintiffs concede that defendant has offered evidence which at first appearance seems to support said finding, but they contend that this evidence is incompatible with the physical facts, which the evidence without conflict shows existed at all times in reference to said property. In this connection, plaintiffs call to our attention that the building as originally planned covered the entire lot, which of course would include the 20-foot strip which the city sought to condemn, and that the original plans contemplated a depressed railway track extending along said 20-foot strip, while the building as constructed under the altered plans did not extend over the 20-foot strip and did not include the depressed railway track. Furthermore, in omitting the railway track, it was necessary to construct ramps to be used in the loading and unloading of cars. These ramps occupied some 2,800 square feet of space in the building which otherwise could have been used for general warehouse purposes. There was also an additional cost of operating the ramp, which would not have been necessary had the building been constructed with a depressed railway track. The 20-foot strip of land was 100 feet long. It, therefore, contained 2,000 square feet. The building was three stories in height. There was therefore 6,000 square feet more in the building as planned than in the building as constructed, but as the depressed railway track would, of course, have occupied the first floor, this would leave the other two floors each containing 2,000 square feet, or a total of 4,000 square feet more in the building as originally planned than were in the building as actually constructed. These physical facts, the plaintiffs rely upon, and contend that the evidence in behalf of the defendant in support of finding No. 9 is incompatible with these physical facts which are shown to exist by evidence without conflict. In addition

to these physical facts which the plaintiffs rely upon to overcome the findings of the court, the plaintiffs produced expert witnesses whose testimony was in direct conflict with said finding of the court. As opposed to this evidence on behalf of plaintiffs, defendant produced two experienced real estate men who testified that the market value of the building as originally planned, and its market value as finally constructed, was the same. One of these witnesses, Mr. Kittrelle, was subjected to a most rigid cross-examination by counsel for the plaintiffs. He explained that the depressed track along one frontage of a building did not increase the market value of the property where it takes away the street frontage, and, where it makes it impossible to have ingress to and egress from the adjoining street, the presence of the depressed or sunken track impairs the marketability of the property. He further testified on cross-examination that the building as constructed was too big for the purpose for which it was constructed, and the overhead cost of operating the large building doomed the enterprise to failure. In other particulars, this witness explained and fortified his opinion that the market value of the property, had the building been constructed as planned, did not exceed the market value of the property after the building had been constructed according to the altered plans.

In addition to the testimony of these two expert witnesses in support of the findings of the court, the trial judge upon the application of the plaintiffs, viewed the premises and inspected the building thereon upon the express stipulation that the observations made by him might be considered as testimony in the case. Information so obtained by the court "is independent evidence that can be taken into consideration in determining the issue of the case". (*Hatton* v. *Gregg*, 4 Cal. App. 537, 540 [88 Pac. 592]; *Otey* v. *Carmel Sanitary Dist.*, 219 Cal. 310, 312 [26 Pac. (2d) 308]; *Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 Pac. (2d) 919].) While it must be conceded that the physical facts as developed at the trial of the case might be held to be strong proof of the contention of the plaintiffs that the building as contemplated was of greater value than the building which was actually constructed, yet in view of the evidence as set forth above, we cannot say that these physical facts are so incompatible with the other evidence as to compel the

conclusion that such evidence is unworthy of belief. The reasons given upon cross-examination by defendant's witness, Kittrelle, supporting his opinion as to the market value of said property under the two different situations apparently did not appear unreasonable to the trial judge whose duty it was to weigh the testimony of this and all other witnesses in the case, and their testimony taken in connection with the knowledge of the court gained by an inspection of the premises was without doubt sufficient to constitute a substantial conflict in the evidence upon the question of the market value of said property. ██ The court resolved this conflict in favor of the defendant under the two proven conditions and as set forth in finding 9. In these circumstances, it must be held that this finding is supported by the evidence in the case. If then the market value of said property was the same after the construction of the building pursuant to the altered plans as it would have been, if it had been constructed as originally planned, then the plaintiffs sustained no damage by reason of the change in said plans, and the construction of said building in pursuance of the altered plans. The conclusion of the trial court that plaintiffs sustained no damage by reason of the change in the plans of said building must be sustained.

██ Plaintiffs contend, however, that the case was tried not only on the theory of the diminution of the market value of their property by reason of the change in the plans pursuant to which the building was constructed, but also upon the theory that plaintiffs were damaged in the amount that it would cost to reconstruct or restore the building to the condition in which it would have been had no alteration been made in its plan of construction. In support of their latter theory, the plaintiffs have cited a number of authorities where it was held, in actions to recover on policies of fire insurance for the loss of buildings destroyed by fire, that the cost of restoring the destroyed building is frequently used as a basis of determining the extent of the loss, rather than the market value of said property. We question whether any of these authorities are applicable to the facts in the present action. We are not able to agree with the plaintiffs in their contention that the case was tried upon the double theory of damages, that is, upon the theory that the damages

are measured by the depreciation of the market value due to the construction of the building according to the altered plans, and upon the theory that the measure of damages is the cost of reconstructing the building to make it conform to the original plans.

In the course of the trial one of the attorneys for the plaintiffs stated their position as to the proper measure of damages as follows: "Here is the theory, if the court please. The cases seem to be in this line as quoted in the brief, that your primary measure of damages is the difference in cost or the difference in market value of the property contemplated and as it actually is. That is your primary measure of damage, but the cases go further and hold that if it is cheaper to reconstruct or repair the building, that whichever is the least, is your measure of damages. We propose to show first that it would be impracticable to reconstruct the building from the business standpoint and to shut down, and secondly, that by actual figures it would cost as much as our other damages are in that measure of damage."

Plaintiffs then produced evidence which tended to support their allegations that the difference in the market value of the property if the building had been constructed according to the original plans and as constructed pursuant to the altered plans was the sum of $80,000. They also attempted to show that the cost of reconstructing the building to make it conform to the original plans was the same amount. This latter evidence was apparently introduced upon the theory that they were entitled to recover the lesser of the two amounts of damages. No claim was made during the trial that they were entitled to recover any greater amount than that which represented the diminution in the market value of the property due to the change in the construction of said building.

It is well settled that the theory upon which a case was tried in the court below must be followed on appeal. (*Story* v. *Nidiffer*, 146 Cal. 549, 552 [80 Pac. 692]; *Durkee* v. *Chino Land & Water Co.*, 151 Cal. 561 [91 Pac. 389]; *Kaufman* v. *Tomich*, 208 Cal. 19 [280 Pac. 130].)

Plaintiffs predicated their action solely upon the theory that the market value of their property had been diminished and that the amount of such diminution in value was not

more than it would cost to reconstruct the building pursuant to the original plans. In order to show that such amount did not exceed the cost of reconstruction of the building, it was necessary for them to establish such cost of reconstruction, but they at no time contended that the cost of such reconstruction was less than the amount in value which the property had been diminished, or that they were entitled to recover such cost of reconstruction if it exceeded the amount of the diminution in the market value of said property due to the construction of the building pursuant to the changed plans.

However, this does not dispose of the entire case before us; but only that part of plaintiffs' claim for damages which they contend they sustained by reason of their having constructed their building pursuant to said altered plans. It does not dispose of their claim for $5,696.60, representing the cost expended by the plaintiff, Gibson Properties Company, prior to the enactment of the ordinance of intention by the city council and prior to the notice to said plaintiff to cease and desist from the construction of any building upon said 20-foot strip. As shown by the statement of facts set forth above, a building covering the whole of said property, including said 20-foot strip, was in the course of construction at the time of the passage of said ordinance of intention, and, upon receiving said notice to cease and desist, said plaintiffs then had their plans redrawn setting back the north wall southerly 20 feet from its original position, changing the location of the elevator pit, and eliminating the depressed railway track. This was done at a cost of $5,696.60.

As noted in the statement of facts, the proceedings to condemn the plaintiffs' property were instituted and conducted under the Street Opening Act of 1903 (Stats. 1903, p. 376), and amendments thereto in force at the time of the commencement of said proceedings and during their pendency. The case of *James* v. *City of Toledo,* 24 Ohio App. 268 [157 N. E. 309, 310], is very closely in point with the instant case as will appear from the following excerpt from the opinion therein: ''We have no doubt that the contention that the city could abandon the proceedings to appropriate this property for street purposes without being liable for

damages is correct, but that does not determine the sufficiency of the averments of the petition. It is apparent from the averments that a lawful permit had been issued to the plaintiff, authorizing her to proceed with the construction of a dwelling house on her lot, and that, acting on such permit, she had in good faith expended large sums of money in proceeding with the excavation, drainage, and other work looking toward the construction of a dwelling house authorized by the permit, and the purpose of this action is to recover damages thus suffered. Is the city liable for such damages? If the city in what it did in the premises was acting in a governmental capacity, such liability would not arise. This nonliability in damages for governmental acts of municipalities has long been established and is a fundamental principle of the law.''

That the city in the improvement of its highways is acting in a governmental capacity is held in *McNeil* v. *City of South Pasadena,* 166 Cal. 153 [135 Pac. 32, 48 L. R. A. (N. S.) 138], and *Municipal Bond Co.* v. *City of Riverside,* 138 Cal. App. 267, 274 [32 Pac. (2d) 661]. Plaintiff, Gibson Properties Company, concedes this general rule and admits that if it is controlling in the instant case they have no right of recovery. It contends, however, that the facts in this case bring it within the exception recognized in the cases of *City of Los Angeles* v. *Cohn,* 101 Cal. 373 [35 Pac. 1002]; *Times-Mirror Co.* v. *Superior Court,* 3 Cal. (2d) 309 [44 Pac. (2d) 547], and *McGee* v. *City of Los Angeles,* 6 Cal. (2d) 390 [57 Pac. (2d) 925]. No useful purpose would be gained by a detailed analysis of these cases showing that the rule announced therein is inapplicable to the instant case. In those cases it was held that an exceptional situation existed therein which exempted them from the general rule relieving the municipality from liability for damages upon a dismissal of a proceeding in condemnation. There was nothing exceptional in the instant case in so far as the claim of the Gibson Properties Company for $5,696.60 is concerned. It is, therefore, governed by the general rule which holds that by a dismissal of a condemnation proceeding after judgment fixing the value of the property sought to be condemned, a municipality is not liable for damages in the absence of statute authorizing such recovery. No contention is made

that any such statutory authority exists in this state which would justify a recovery on the claim here involved.

The judgment is affirmed.

Shenk, J., Edmonds, J., Waste, C. J., Langdon, J., Seawell, J., and Houser J. concurred.