[Civ. No. 120. Fifth Dist. Jan. 18, 1963.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. D. OWEN ALEXANDER et al., Defendants and Appellants.

86

88

McKinney & Jordan, Thorpe, Sullivan, Clinnin & Workman, Roger M. Sullivan and Henry K. Workman for Defendants and Appellants.

Holloway Jones, Jack M. Howard, A. Matthew Raggio, Homer L. McCormick, Jr., and Robert E. Reed for Plaintiff and Respondent.

CONLEY, P. J.—This is an appeal by defendant landowners, D. Owen Alexander and Perle Alexander, from a judgment of $37,400 in their favor in a condemnation suit. The action was commenced by the State of California acting through the Department of Public Works for the acquisition of access rights only from and to a 17.8-acre parcel of land owned by the Alexanders and situated at the northeast corner of the intersection of Avenue 112, a county road of Tulare County, and U. S. Highway 99. The property is located about one-half mile north of Pixley where the state is constructing a freeway along U. S. Highway 99.

At the time of the acquisition of the property by the state the defendant owners were devoting approximately one acre at the southwest corner of their property to the operation of a drive-in orange juice stand and snack bar. The balance of the land was used for farming. The area in commercial use was paved; there was a 40- by 80-foot overhead aluminum-steel canopy under which automobiles could park; adjacent thereto, but off the paved area, were located a walk-in freezer,

rest rooms and a concrete slab next to a trailer, which was used as an office and for sleeping quarters. The improved area was landscaped, and it was defined on one side by a redwood fence.

The appellants feel that they were not awarded sufficient damages and have appealed, alleging errors on the part of the trial court in the admission and exclusion of evidence and also claiming that the court erred in the giving of instructions. The following questions are raised by appellants:

(1) Was it error to refuse to permit one of defendants' valuation witnesses to give his opinion as to the highest and best use of the property?

(2) Was the court wrong in preventing defendants from introducing in evidence an artist's illustration allegedly depicting the adaptability of the property for commercial uses?

(3) Was it error to admit hearsay testimony of the valuation of access openings agreed to by a buyer and a seller of a comparable parcel?

(4) Was it proper to admit the hearsay opinion of an employee of a corporation which made an alleged comparable purchase that the price paid for the property was higher than its market value?

(5) Were there errors in the court's instructions?

THE RULING PREVENTING THE WITNESS PERRY FROM GIVING HIS OPINION AS TO THE HIGHEST AND BEST USE OF THE PROPERTY CONDEMNED.

 Defendants called C. H. Perry as one of their valuation witnesses; he had been in business on Highway 99 for about 14 years, operated the Sky Ranch restaurant and the Tulare Inn coffee shop and was vice president of the Tulare Inn Corporation, which owns a large motel on the same side of Highway 99 about 16 miles north of Alexanders' property, at the intersection of that highway and a county road. When Mr. Perry was asked to give his opinion as to the value of the Alexander land and his opinion of its highest and best use, the plaintiff objected on the ground that the witness had not shown proper qualifications to testify. The court thereafter permitted the witness to give his opinion as to the reasonable market value of the property both before and after the taking, but ruled he was not qualified to give an opinion as to the highest and best use of the property.

This ruling was contrary to the state's second thought on the combined objection, for respondent's counsel stated to the court: ". . . if your Honor is inclined to rule that the testimony regarding value should be allowed, then I think in all fairness to the Court I wouldn't urge my objection to the highest and best use solely; . . ."

After hearing evidence that Mr. Perry had investigated highway locations between Delano and Fresno in great detail for the purpose of selecting the site for his own motel, the court acted within proper discretionary limits by permitting him to give his opinion as to value of the property taken. It is not necessary that a valuation witness be a professional appraiser or real estate broker in order to qualify as an expert. As is said in *City of Stockton* v. *Ellingwood*, 96 Cal.App. 708, 716 [275 P. 228]:

"If a witness, by reason of his skill, learning, or technical training, understands the adaptability of the lands in question for a particular purpose, and the demand for land for such purpose, he may state the market value of the land, although he may be entirely unacquainted with the other elements which would be considered by different buyers competing for the same property. On the other hand, if the witness has knowledge of the market value of the lands, even though he possesses no technical skill, training, or ability, he may state the market value. The different elements considered by the witnesses in giving their opinions as to market value may be inquired into upon cross-examination, and if, upon such cross-examination, it appears to the court that the witness' testimony is based upon improper consideration, or upon what is ususally termed as speculative only, it should be stricken from the record or withdrawn from the consideration of the court or the jury." (See also *Los Angeles City High School Dist.* v. *Rodriguez*, 135 Cal.App.2d 760, 767-769 [287 P.2d 871]; *People* v. *Marblehead Land Co.*, 82 Cal.App. 289, 302 [255 P. 553]; *People* v. *Willis*, 30 Cal. App.2d 419 [86 P.2d 670]; *Remmers* v. *Ciciliot*, 70 Cal. App.2d 432, 437-438 [161 P.2d 257].)

When a witness, having qualified, gives his opinion as to the value of the land sought to be condemned, he may properly give his reasons upon direct examination for his conclusion. As the element of highest and best use is an important factor to be considered in reaching a conclusion with respect to value (*Sacramento etc. R. R. Co.* v. *Heil-*

*bron,* 156 Cal. 408, 409 [104 P. 979]; *City of Napa* v. *Navoni,* 56 Cal.App.2d 289 [132 P.2d 566]; 124 A.L.R. 911; *San Diego Land etc. Co.* v. *Neale,* 78 Cal. 63, 69 [20 P. 372, 3 L.R.A. 83]; *Santa Ana* v. *Harlin,* 99 Cal. 538, 542-544 [34 P. 224]; *Olson* v. *United States,* 292 U.S. 246, 255 [54 S.Ct. 704, 78 L.Ed. 1236]; 4 Nichols on Eminent Domain (3d ed.) § 12.314, p. 140), it would seem clear that one who is entitled to give an opinion as to the value of real property should necessarily be in a position to give an opinion also with respect to its highest and best use.

In *United States* v. *25.406 Acres of Land,* 172 F.2d 990, 993, it is said: "Testimony as to value would be worth little or nothing if witnesses were not allowed to explain to the jury their qualifications as experts and the reasoning by which they have arrived at the expert opinion to which they testify; and the rule is that they may thus give the grounds of their opinions. Wigmore on Evidence 2d Ed. sec. 562; Lewis, Eminent Domain 3d Ed. sec. 654."

We therefore conclude that the court erred in not permitting Mr. Perry to state in so many words what his opinion of the highest and best use was. However, the question remains whether this error, considered separately or in conjunction with other alleged errors in the case, would be sufficient to justify a reversal of the judgment. We are bound by the provisions of section 4½ of article VI of the Constitution, and under it we can not reverse a judgment for any reason short of a miscarriage of justice. In this connection, it should be noted that the error of the court in making its ruling was largely, if not wholly, cured through additional questions and answers of the witness on cross-examination:

"Q. Now is your opinion of this value in before condition based upon any specific plan or proposal that you might have had in mind or that Mr. Alexander might have had in mind? A. Well, I base it on what we have done on our property at Paige Avenue and 99 Freeway with development which could be done there, the filling station and motel and cafe.

"Q. Do you have an idea—strike that. Would this be, sir in your opinion, what a willing buyer would pay a willing seller, say, when we are talking about this fair market value in before conditions, what a willing buyer would pay a willing seller, both knowing all of the adaptabilities and availability of this property, both being fully informed as to the highest

and best use of the property on the date of valuation with neither being under any compulsion to sell or under any compulsion to buy? I know that's kind of a complicated thing. Do you understand what I mean? A. You mean what it would have brought on the market then?

"Q. That's right. A. In when?

"Q. In the before condition on April—. A. That's April of '60?

"Q. That's right. A. Well, I think it would bring a $100,000 myself.

"Q. That includes, sir, does it, the improvements that were on it at that time? A. Yes.

"Q. In the after condition, have you given any value to those improvements? A. You mean with it blocked off?

"Q. That's right. A. Well, the improvements would be worth very little with it blocked off."

The testimony of the witness as a whole was based on his investigation of locations of possible sites for restaurants, motels and similar business establishments along the full line of the highway, and it was necessarily brought home to the jury that Mr. Perry was considering value from the standpoint of a commercial operation such as his own business. We do not believe that the jurors could have missed the implications flowing from his testimony; they must have been well aware of the basis for his opinions with respect to value.

### THE OFFERED ARTISTIC SKETCH

▉ The defendants sought to introduce a fanciful sketch showing "one of the possible proposed plans of utilization" of the property. The appellants concede that "Perhaps the refusal to admit this exhibit, standing alone, would not have been prejudicial error." The court correctly denied its introduction.

While in certain restricted circumstances a trial court may admit maps, diagrams or illustrations of proposed uses of a property for the purpose of showing physical feasibility and adaptability with respect to the construction of buildings on the land sought to be condemned (*Buena Park School Dist.* v. *Metrim Corp.*, 176 Cal.App.2d 255 [1 Cal.Rptr. 250]; *Los Angeles* v. *Kerckhoff-Cuzner Mill & Lbr. Co.*, 15 Cal.App. 676 [115 P. 654]), it would be highly improper to permit exhibits of this kind aimed at the purpose of increasing damages. ▉ The correct rule is thus stated in *People* v. *Chevalier*, 52 Cal.2d 299 [340 P.2d 598] at page 309:

"Defendants finally contend that the court erred in denying admission of an architect's sketch showing a proposed improvement of their land. Defendants sought to show thereby that their property in one single piece, without the street bisection, would be suitable and valuable for building a motel and restaurant project, and that the severance ruined the prospect of such a development. It is true that evidence of a proposed use may be relevant, not to enhance damages but to show that the proposed use is feasible and, as such, might enter into a determination of the market value. (*Laguna Salada etc. Dist.* v. *Pacific Dev. Co.,* 119 Cal.App.2d 470, 476 [259 P.2d 498].) However, all the experts agreed that the land was suitable and valuable, before but not after the condemnation, for the building of a motel and restaurant project, and that this would have been a feasible plan for the use of the property. It therefore appears that the sketch of a specific plan or development could have no other purpose than to attempt to enhance damages, and its rejection was proper. (*People* v. *La Macchia,* 41 Cal.2d 738, 751 [264 P.2d 15]; *City of Los Angeles* v. *Kerckhoff-Cuzner Mill & Lbr. Co.,* 15 Cal.App. 676, 677-678 [115 P. 654].)"

### TESTIMONY AS TO VALUE OF ACCESS OPENINGS ON A COMPARABLE SALE

The valuation witness Phillipe, called by the plaintiff, testified that one of the elements which he took into consideration in forming his opinion of the value of the subject property was the sale of a 171-acre parcel for $107,000 which had involved six access openings. The witness stated over objection that the buyer and seller there involved had placed an agreed value for the sale on all six openings of $15,700. This allocation was not specified in the deed or in the escrow instructions. The objection here expressly raises the question whether hearsay evidence as to the facts of previous sales may be used by an expert valuation witness in giving his reasons for his own opinion.

Section 1845.5 of the Code of Civil Procedure, first passed in 1957, as amended in 1959, reads as follows: "In an eminent domain proceeding a witness, otherwise qualified, may testify with respect to the value of the real property including the improvements situated thereon or the value of any interest in real property to be taken, and may testify on direct examination as to *his knowledge of the amount paid for comparable*

*property or property interests.* In rendering his opinion as to highest and best use and market value of the property sought to be condemned the witness shall be permitted to consider and give evidence as to the nature and value of the improvements and the character of the existing uses being made of the properties in the general vicinity of the property sought to be condemned.'' (Emphasis added.)

Prior to *County of Los Angeles* v. *Faus,* 48 Cal.2d 672 [312 P.2d 680], the applicable rule prevented a valuation witness from giving an account of comparable sales on direct examination, but he may now do so. ▪▪▪ The specific question involved is whether in describing comparable sales the witness may rely for the facts upon his own investigation of records in the recorder's office, and in the courts, the stamps upon deeds and the statements of those who personally participated in the sales. The important evidentiary point involved is whether or not the opinion of value which the witness has given is sustained by proper reasons. From a practical standpoint, if each person previously involved in effecting comparable sales should have to be called to the stand to establish the detailed facts of such sales, it would lengthen litigation of this kind out of all reason and would make it almost impossible for the state or defending landowners to make a proper showing as to valuation opinion within a reasonable time and at reasonable expense. Therefore, within proper limits, facts acquired by hearsay and used by a valuation expert in support of his conclusion that certain sales are comparable and therefore furnish support for his opinion concerning value have been customarily received in evidence in this state. ▪▪▪ In *People* ex rel. *Dept. of Public Works* v. *Donovan,* 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1], it is said:

''An expert may detail the facts upon which his conclusions or opinions are based, even though his knowledge is gained from inadmissible or inaccurate sources. (*Betts* v. *Southern Calif. etc. Exchange,* 144 Cal. 402 [77 P. 993]; *McElligott* v. *Freeland,* 139 Cal.App. 143 [33 P.2d 430].)'' (See also *Covina Union High School Dist.* v. *Jobe,* 174 Cal.App.2d 340, 348 [345 P.2d 78]; *Laguna Salada etc. Dist.* v. *Pacific Dev. Co.,* 119 Cal.App.2d 470, 475-476 [259 P.2d 498]; *Long Beach City High School Dist.* v. *Stewart,* 30 Cal.2d 763, 772-773 [185 P.2d 585, 173 A.L.R.2d 249]; *People* v. *Al. G. Smith Co., Ltd.,* 86 Cal.App.2d 308, 312 [194 P.2d 750].) ▪▪▪ The

evidence here complained of was within the permissible scope defined by the authorities. ▮▮▮ It will be noted that this rule does not permit hearsay evidence of the opinion of other persons as to valuation.

### THE CLAIM OF ERROR BY REASON OF EVIDENCE OF A HEARSAY OPINION AS TO VALUE

▮▮▮▮ One of the parcels of land referred to in the record was a small area for service station purposes bought by the Union Oil Company. The sale price was $35,000. The witness Wilson, called as a valuation expert by the plaintiff, attempted to explain the effect of this evidence by testifying that in his opinion it was out of line with proper market value; he said that the reasonable value of such an oil station property along this section of the highway, in his opinion, was approximately $16,000, and that the sale in question was not fairly illustrative of market value. In connection with this testimony he said that an employee of Union Oil Company had stated to him that in his opinion the company had paid too much for the land in question.

As an abstract matter, we agree with the appellant that it is improper for an expert witness to bring in hearsay testimony of the opinion of others as to value. In *People* v. *La Macchia*, 41 Cal.2d 738 [264 P.2d 15], the court states at page 745:

"As said in *Peirson* v. *Boston El. R. Co.*, 191 Mass. 223 [77 N.E. 769]: '[T]here is no right to put in evidence of matters which are incompetent as substantive evidence for the purpose of fortifying the opinion of an expert witness, even though they are offered under the guise of the reasons for his opinion, and even though they might properly have been admitted on cross-examination to test and diminish the weight to be given to his opinion.' (Pp. 233-234.) The rule is similarly expressed in *United States* v. *25.406 Acres of Land*, 172 F.2d 990, 993, and Nichols states it in substantially the same language. (5 Nichols on Eminent Domain [3d ed.] § 18.45 [1], p. 181.)

"The general rule which permits a witness to state the reasons upon which his opinion is premised may not be used as a vehicle to bring before the jury incompetent evidence. To so open up the inquiry would create a disastrous break in the dike which stands against a flood of interminable investigation." (See also *People* v. *Nahabedian*, 171 Cal.App.2d

302, 310 [340 P.2d 1053]; *Furtado* v. *Montebello Unified School Dist.*, 206 Cal.App.2d 72, 78-79 [23 Cal.Rptr, 476]; *Buchanan* v. *Nye*, 128 Cal.App.2d 582, 586 [275 P.2d 767]; California Condemnation Practice (Cont.Ed.Bar 1960) page 301; 5 Nichols on Eminent Domain (3d ed. [revised 1962]) § 18.45(1), pp. 268-269.)

However, we must look to the record to see whether a proper objection was made to this evidence. The particular question was not objected to. The question with the answer is as follows:

"Q. . . . Did they give you any indication as to whether or not they felt that the price that they paid was a fair price or not? A. The indication, they felt that it was above market, considerably above market."

 In order to be able to claim error on appeal because of the erroneous admission of evidence, the record must show that appellant attempted to exclude such evidence at the earliest possible moment in the trial court. (3 Cal.Jur.2d, Appeal and Error, § 140, p. 604.) This would involve the making of a proper objection to its introduction.

 Prior to the asking of the vital question, counsel for respondent asked the witness what he had found out as a result of talking with Mr. Hubbard Anderson, who was in charge of gasoline sales for the Union Oil Company; counsel for appellants was granted leave to examine the witness on *voir dire,* after which he stated: "I am going to object to any conversation with a man that is not in the Marketing Division; in other words, he is not one of the persons to talk to." After argument, the court said: "I am going to overrule the objection," and stated to the jury that the evidence would be admitted ". . . not to establish the truth of what Mr. Anderson said, because it is hearsay testimony, and . . . it is allowed for the particular purpose of showing one of the elements upon which the witness on the stand bases his opinion." The then pending question was never answered. Counsel resumed the direct examination of the witness, and after several additional questions, asked the one now objected to. The grounds of objection must be stated with reasonable certainty, and the objection must specify the particular evidence which is sought to be excluded. (*Sublett* v. *Henry's etc. Lunch,* 21 Cal.2d 273, 276 [131 P.2d 369]; *People* v. *Willis,* 30 Cal.App.2d 419, 421 [86 P.2d 670]; *People* v. *One Ford V8 Coach,* 21 Cal.App.2d 445, 448-449

[69 P.2d 473]. See also 3 Cal.Jur.2d, Appeal and Error, § 156, p. 634, and cases there cited.)

If an objection for some reason is not sufficient in form and content, a motion to strike may be resorted to; such motion must be timely, specific and accurate. (*Rose* v. *State of California*, 19 Cal.2d 713, 742 [123 P.2d 505]; *People* v. *Loop*, 127 Cal.App.2d 786, 800-801 [274 P.2d 885]; 3 Cal. Jur.2d, Appeal and Error, § 158, p. 639, and cases there cited.)

The general principle is well established that evidence which is technically incompetent and immaterial under the exclusionary rules, if offered and received without proper objection or motion to strike, may be considered in support of a judgment. (*Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P.2d 156], and cases there cited; *People* v. *Willis*, *supra*, 30 Cal.App.2d 419, 421; 19 Cal.Jur.2d, Evidence, § 474, p. 238.)

Witkin, California Evidence, pages 751-753, notes that illustrations of this principle are numerous and cover a wide range of evidentiary topics such as incompetent hearsay, secondary evidence violating the best evidence rule, inadmissible opinions, lack of foundation, incompetent, privileged or unqualified witnesses, and violations of the parol evidence rule. (See also 3 Cal.Jur.2d, Appeal and Error, §§ 140-142, pp. 604-609.)

An objection which specifies the wrong ground is as bad as an insufficient general objection, for reliance upon one ground only is treated as a waiver of any other possible grounds. (*Estate of Huston*, 163 Cal. 166, 173 [124 P. 852]; *Griffen* v. *Jacobsen*, 17 Cal.App.2d 68 [61 P.2d 350]; *People* v. *Alves*, 123 Cal.App.2d 735 [267 P.2d 858]; *Kirkpatrick* v. *Tapo Oil Co.*, 144 Cal.App.2d 404 [301 P.2d 274]; *Bank of America* v. *Taliaferro*, 144 Cal.App.2d 578 [301 P.2d 393]. See also Witkin, California Evidence, Introduction of Evidence at Trial, § 706, p. 738.)

It would seem that defendants' counsel did not properly preserve his record and that he is not entitled to raise this point on appeal. But even if we should give appellants the benefit of the assumption of a proper objection to the evidence by reason of their counsel's earlier discussion of the subject, we would conclude that such error does not result in a miscarriage of justice and does not warrant a reversal of the judgment.

## The Instructions

 Appellants' contention that there was error in the instructions can only be entertained with respect to four of them which are covered by a stipulation of the parties, in view of the fact that the record does not show which party requested the instructions complained of and given or the instructions refused. In such circumstances, the attempt to urge error must fail. (*Deevy* v. *Tassi*, 21 Cal.2d 109, 124 [130 P.2d 389]; *Alexander* v. *McDonald*, 86 Cal.App.2d 670, 671 [195 P.2d 24]; *Forbes* v. *Mattos*, 35 Cal.App.2d 481, 484 [96 P.2d 166]; *Buckley* v. *Shell Chemical Co.*, 32 Cal. App.2d 209, 216 [89 P.2d 453]; 4 Cal.Jur.2d, Appeal and Error, § 569, pp. 441-442.) However, as to four of the instructions, it was stipulated in open court that they were offered by plaintiff. These instructions are as follows:

(1) "You are not to consider what the property was worth to the defendants, the owners, for speculation, or merely for possible uses, nor what they claim it was worth to them, nor what it may be worth to plaintiff for highway or other purposes, nor what the property would bring at a forced sale. You are not to consider the price the property would sell for under special or extraordinary circumstances, but its fair market value if offered in the market under ordinary circumstances, a reasonable time being given to make the sale."

 (2) "The income or productive value of an actual or contemplated use is not a measure of compensation. Profits which might be derived from devoting property to a particular purpose depend so much on conditions that can not be foreseen that they have no competency, and are not to be considered by you."

 (3) "In considering the adaptability of property for any particular purpose, a factor to consider is whether its use for such purpose is economically feasible. If it appears that operations under such use can not be carried on except at a loss, the prospect of use for such purpose is not a proper element of value. If you believe, therefore, that use of the property for any specific purpose is not economically feasible, then such a prospective use for the property is not reasonably probable and does not add to the market value of the land and should be disregarded by you."

(4) "Injury or inconvenience to a business is not compensable and does not form an element of and can not be taken into consideration by you in arriving at the damages in this case. In determining the damages in this case to be awarded to the defendants, you must consider the damage to the property only and are not to take into consideration any damage to or loss of any business conducted on the property with the improvements located thereon at the date of valuation."

These instructions are not claimed to be incorrect statements of abstract law, but they are attacked on the ground that they are misleading in that no evidence was produced as to business profits or as to value of the property to defendants personally as distinguished from reasonable market value.

We cannot agree with appellants. The statements of the law were correct, and we do not think they are misleading. The first instruction quoted above, in effect, stated that market value is not what property may be worth to a particular property owner for some specific use as contrasted with what the property would sell for on the open market. The second instruction properly points out that income or profits which might be obtained from devoting land to a particular use is not a proper measure of compensation in a condemnation proceeding, as such profits would be variable, depending upon unforeseeable conditions; consideration of such theoretical profits might lead a jury to award damages for remote or merely conjectural possibilities.

The third instruction deals with the question of whether any particular suggested use of the property is economically feasible; if it is not, it could scarcely affect its market value; it is not inconsistent to tell the jury that profits are not a proper measure of value, even though profitability, or its absence, may be considered in determining the highest and best use of such property.

The fourth instruction correctly told the jury that they were to consider damages to defendants' property only and must not take into consideration any loss of business which might result from the taking; in the absence of this instruction the jury might have given damages for the loss of the orange juice stand business conducted on one acre of the defendants' property, and this would not have been a proper measure of damages.

Are there any errors in the record which alone or

in combination would warrant a reversal of the judgment? We believe not. The jury brought in a verdict in the sum of $37,400, which exceeds in amount the value placed upon the condemned property by each of the two qualified expert witnesses produced by the state. The entire tract of land was originally bought by the appellants for the sum of $17,000, and the amount deposited by court order at the beginning of the litigation to permit plaintiff to take immediate possession was $19,490.27. Furthermore, the jury's view of the premises constituted independent evidence which it was entitled to weigh in fixing the value of the property. (*Otey* v. *Carmel Sanitary Dist.*, 219 Cal. 310, 312 [26 P.2d 308]; *Gibson Properties Co.* v. *City of Oakland*, 12 Cal.2d 291, 297 [83 P.2d 942]; *Peckwith* v. *Lavezzola*, 50 Cal.App.2d 211, 217 [122 P.2d 678]; *Hatton* v. *Gregg*, 4 Cal.App. 537 [88 P. 592]; *White* v. *Walsh*, 105 Cal.App.2d 828, 831-832 [234 P.2d 276]; *McCarthy* v. *City of Manhattan Beach*, 41 Cal.2d 879, 889 [264 P.2d 932]; *Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699, 704-705 [28 P.2d 919].) We find no errors in the record which would lead to the conclusion that there has been a miscarriage of justice. (Cal. Const., art VI, § 4½.)

The judgment is affirmed.

Brown, J., concurred.

Stone, J., being disqualified, did not participate.