# REPORTS OF CASES

DETERMINED ·IN· THE

# SUPREME COURT,

## APRIL TERM, 1875.

[No. 4,625.]

TIERY WRIGHT *v.* LEVI CARPENTER AND THOMAS
F. LAUGENOUR.

INSPECTION OF LAND BY A JURY DURING A TRIAL.—If, on the trial of an
issue in ejectment, as whether the demanded premises were swamp or
dry land on the 28th of September, 1850, the jurors are sent by the
Court to view the premises in controversy, they cannot take into con-
sideration the result of the examination in determining the character of
the land, as swamp or dry, but must render their verdict on the testi-
mony of witnesses given on the stand, and use the inspection of the
land only as a means of enabling them to understand and apply the
evidence.

APPEAL from the District Court, Sixth Judicial District,
County of Yolo.

Ejectment to recover the north-west quarter of section
twenty-six, in township eleven north, range two east, Mount
Diablo base and meridian. The plaintiff claimed title to
the demanded premises by virtue of a patent from the
State of California, conveying the same to him as a part of
the grant of the swamp and overflowed land to the State,
by the Act of Congress of September 28, 1850. The patent

was dated September 21, 1862. The defendant Laugenour claimed title by virtue of a patent issued to his grantor, as a preëmptor, by the United States, on the 16th of June, 1866. The defendant Carpenter was his tenant. On the trial, witnesses were sworn and examined by each party as to the character of the land on the 28th of September, 1850. Before any testimony was offered, the Court sent the jury to examine the land. The plaintiff had a verdict and judgment, and the defendants appealed.

The other facts are stated in the opinion.

*W. C. Belcher, W. W. Pendegast* and *S. G. Harper,* for the Appellants.

The jury are sworn to render a true verdict according to the evidence. The evidence is the testimony of witnesses. Not unfrequently in criminal cases, and occasionally in civil cases, an inspection by the jury of premises becomes necessary, to enable them to understand the testimony of witnesses, and in such cases the Courts have always exercised the right to send them out to make the necessary inspection. Our statute seeking to embody, as far as possible, all the well recognized rules of the common law, has, in section 609 of the Code of Civil Procedure, declared this right.

That section authorizes the Court, when, in its opinion, "it is proper for the jury to have a view of the property which is the subject of the litigation, or of the place where any material fact occurred," to order them to be conducted in a body, under charge of an officer, to the place, "which shall be shown to them by some person appointed by the Court for that purpose."

If they could consider the results of their own examination at all, in arriving at their verdict, they could give such weight to the results of that examination as should seem good to them, even to the exclusion of the evidence of witnesses, if the evidence did not harmonize with their observations and conclusions.

*C. N. Sprague* and *Jo Hamilton,* for the Respondent.

What is the purpose of an inspection of property or

premises? It must be to enable the jury to determine the issues between the parties—that is to say, what the character of the land in controversy must have been, and most likely was, on the 28th of September, 1850; this was to be determined, first, by seeing the land as it now is, and after hearing the testimony of the witnesses as to what it was in 1850, and in what it has changed, if changed at all, determines the only question of controversy—that is to say, what it was in 1850. The Court instructs the jury that the only issue is the character of the land, not as it is now, but what it was in 1850.

By the Court, CROCKETT, J.:

The action is ejectment, and the principal contest is whether the demanded premises passed to the State as swamp and overflowed land, under what is known as the Arkansas Act. At the trial the Court sent the jury to view the premises in controversy, as authorized by section 610 of the Code of Civil Procedure; and at the close of the testimony, on the request of the plaintiff, gave to the jury the following, among other instructions:

"Ninth. The jury, under the order of this Court, proceeded to view and examine the lands in controversy, and they are at liberty, and it is their duty to give such examination made by them its due and proper weight in assisting them to determine the character of the lands on the 28th of September, 1850.

"Tenth. If the jury find from the evidence of the witnesses, and from their examination of the lands in controversy that it was such on the 28th day of September, 1850, that it was rendered unfit for cultivation by reason of its overflow, it would be overflowed lands within the meaning of the Act of that date, even though at that precise time it had been dry."

These instructions are erroneous in so far as they authorized the jury to take into consideration the result of their own examination of the land, in determining its character as swamp and overflowed, or otherwise. In authorizing

the Court to send the jury to view the premises in litigation, it was not the purpose of the statute to convert the jurors into silent witnesses, acting on their own inspection of the land, but only to enable them the more clearly to understand and apply the evidence. If the rule were otherwise, the jury might base its verdict wholly on its own inspection of the premises, regardless of an overwhelming weight of evidence to the contrary, and the losing party would be without a remedy by motion for a new trial. It would be impossible to determine how much weight was due to the inspection by the jury as contrasted with the opposing evidence, or (treating the inspection as in the nature of evidence) whether it was sufficient to raise a substantial conflict in the evidence. The cause would be determined not upon evidence given in Court, to be discussed by counsel and considered by the Court in deciding a motion for a new trial, but upon the opinions of the jurors founded on a personal inspection, the value or the accuracy of which there would be no method of ascertaining. The statute could not have intended to produce such results as these, in authorizing the jury to view the premises.

Judgment reversed and cause remanded for a new trial. Remittitur forthwith.

Neither Mr. Chief Justice WALLACE nor Mr. Justice McKINSTRY expressed an opinion.