[Civ. No. 313. First Appellate District.—December 7, 1906.]

KATE HATTON et al., Minors, by Guardian, Respondents,
v. J. W. GREGG, Appellant.

QUIETING TITLE—LANDS ACQUIRED BY ACCUMULATION AND RECESSION
OF STREAM—EVIDENCE—VIEW OF PREMISES—KNOWLEDGE OF COURT.
In an action to quiet title to ten acres of land, where uncontradicted
evidence showed that it lies between the channel of a non-navigable
river, as it existed forty-three years before suit, and as it then ex-
isted, and that it is loose, sandy, loam, bottom land and sediment,
and that the river changes its channel to some extent each winter,
the court, which viewed the premises in the presence of the parties,
was entitled to treat its knowledge thus gained as independent evi-
dence, and to find from such knowledge and the proof given that the
land in dispute had been formed by natural causes, by imperceptible
degrees, by the accumulation of material and by the recession of the
river.

APPEAL from a judgment of the Superior Court of Mon-
terey County. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Dougherty & Lacy, for Appellant.

J. H. Andresen, and Zabala & Wyatt, for Respondents.

HALL, J.—This is an appeal from a judgment quieting
the title of plaintiffs to a ten-acre tract of land.

The court, after finding plaintiffs to be the owners of the
tract of land in controversy, and which is fully described
by metes and bounds in finding IV, proceeds as follows: "That
the plaintiffs, at the time of the commencement of this ac-
tion and long prior thereto, were the owners in fee of a
large tract of land on the right bank of the Carmel river
known as the west half of the Rancho Canada de la Segunda,
*and from natural causes the lands particularly described in
this finding have been formed by imperceptible degrees upon
said bank by the accumulation of material and by the reces-
sion of the said Carmel river,* and by this means alone the

plaintiffs have become and are the owners of the lands described in this finding.'' (The italics are ours.) So much of the above finding as is italicized is attacked by the defendant as not being supported by the evidence, and in this connection he very correctly states in his brief that: ''If this finding is justified by the evidence the judgment should be affirmed, otherwise it must be reversed, and a consideration of this question is the only point involved in this appeal.''

The bill of exceptions is short and, so far as it bears upon this question, is as follows: ''Plaintiffs proved by competent evidence that at the time of the commencement of this action they and their predecessors in interest were, and ever since February 4, 1859, had been, the owners and in the possession of a large tract of land in Monterey county, California, known as the west half of the Rancho Canada de la Segunda, and that the center of the Carmel river as it existed February 4, 1859, constituted the southern boundary of said rancho on said date. That at the time of the commencement of this action said Carmel river, which each year changes its course to some extent, had its course and channel south of where it was on said February 4, 1859, and that the land described in finding IV is the land lying between the center of the channel of said river, as it existed February 4, 1859, and the center of said channel as it existed at the time of the commencement of this action, and is ten acres in extent, and the same is formed of a loose sandy loam, bottom land, a sediment of the nature and formation of Ollason Island, and susceptible to the action of water. That said Carmel river is and always has been an unnavigable mountain stream, having an abrupt descent to the ocean, and during the summer months carrying very little water and is sometimes entirely dry; while during the winter months each year it is a torrential stream, carrying a large volume of water, and changes its channel to some extent. . . . The court went upon and viewed the lands and premises described in the complaint by consent of the parties upon request made by the attorneys for defendant in the following words, to wit:

''Mr. Lacey: Will your Honor care to take the time to go over and look over that country?

''The Court: I am willing to do it.

"Mr. Lacey: The surveyors are prepared to go with you and we will provide conveyances for you from Monterey. . . .

"And the court then and there, accompanied by the said surveyors representing the respective parties, viewed the topography of the country generally, the land in dispute, its character, formation and growth. The foregoing was all the evidence offered or received as to the issues involved in this case."

It is now urged that the court cannot predicate any finding of fact upon a view of the premises, or upon information gained from such view; and that in this case, if we disregard such view of the premises, there is no evidence in the record to support the finding attacked. It must be confessed that the rule contended for by appellant as to the effect of a view of the premises is followed by the courts in some of the states (*Chutes* v. *State,* 19 Minn. [271] 230; *Sasse* v. *State,* 68 Wis. 530, [32 N. W. 849]; *Harrison* v. *Iowa M. R. Co.,* 36 Iowa, 323; *Machader* v. *Williams,* 54 Ohio St. 344, [43 N. E. 324]; *Neff* v. *Reed,* 98 Ind. 341); and was at one time the rule in this state (*Wright* v. *Carpenter,* 49 Cal. 607).

In this last-mentioned case the question at issue was as to whether or not certain land was on the twenty-eighth day of September, 1850, swamp and overflowed lands. The jury, under the order of the court, had viewed the lands; and the court in its instructions told the jury that they were at liberty, and it was their duty, to give such examination made by them its due and proper weight in assisting them to determine the character of the lands on the twenty-eighth day of September, 1850; and that if they found from the evidence of the witnesses and from their examination of the lands in controversy that it was such on the twenty-eighth day of September, 1850, that it was rendered unfit for cultivation by reason of its overflow, it would be overflowed lands within the meaning of the act of that date.

The court said: "These instructions are erroneous in so far as they authorize the jury to take into consideration the result of their own examination of the land in determining its character as swamp and overflowed, or otherwise. In authorizing the court to send the jury to view the premises in litigation it was not the purpose of the statute to convert the

jurors into silent witnesses, acting on their own inspection of the land, but solely to enable them the more clearly to understand and apply the evidence. If the rule were otherwise, the jury might base its verdict wholly on its own inspection of the premises, regardless of an overwhelming weight of evidence to the contrary, and the losing party would be without a remedy by motion for a new trial." The opinion continues with more to the same purpose, but we have quoted this much at length in order to make clear the effect of the subsequent case of *People* v. *Milner,* 122 Cal. 171, [54 Pac. 833].

In *People* v. *Milner,* 122 Cal. 171, [54 Pac. 833], the court, after discussing at length the case of *Wright* v. *Carpenter,* 49 Cal. 607, [54 Pac. 833], and the cases of *People* v. *Green,* 53 Cal. 60, and *People* v. *Bush,* 68 Cal. 623, [10 Pac. 169], which likewise treat of the character and effect of information received from a view of the premises, said: "It must be concluded, therefore, that the doctrine of *Wright* v. *Carpenter,* 49 Cal. 607, has been set aside by the later utterances of this court."

Absolutely the only doctrine laid down by *Wright* v. *Carpenter,* 49 Cal. 607, is that knowledge obtained by an examination of the premises is not independent evidence that can be taken into consideration in determining the issues of the case. The language of the court in *Wright* v. *Carpenter,* 49 Cal. 607, is: "These instructions are erroneous in so far as they authorized the jury to take into consideration the result of their own examination of the land in determining its character as swamp and overflowed, or otherwise." The doctrine that information obtained from a view of the premises is not independent evidence that can be taken into consideration in determining the issues of the case having been set aside, it follows, as night follows day, that such information is independent evidence that can be taken into consideration in determining the issue of the case.

If, in a case where the question at issue was as to whether or not a certain parcel of land was swamp and overflowed land, and all the witnesses examined on behalf of the plaintiff should so testify, and the court, without the examination of any witness on behalf of defendant, but with the consent of the parties, should visit and view the premises, and should

there see that the land was rolling hill land, supporting a growth of oaks and other vegetation only grown on upland, it is difficult to reconcile with common sense a rule that would not permit the court to find the facts to be in accordance with what it saw with its own eyes.

Both upon reason and the authority of *People* v. *Milner,* 122 Cal. 171, [54 Pac. 833], we are constrained to hold that the knowledge gained by the court from a view of the premises is independent evidence to be taken into consideration by the court in determining the issues of the case.

It is next urged that, even if it be conceded that a view of the premises furnishes independent evidence, yet from the nature of things the court could not, from such examination, find that the land in dispute had been formed from natural causes, by imperceptible degrees, by the accumulation of materials or by the recession of the bank of Carmel river.

We are unable to agree with this contention. The record shows that uncontradicted evidence was given to the effect that between February, 1859, and October 18, 1902, the channel of the Carmel river had moved south to such an extent that the land in dispute containing ten acres now lay between the channel as it existed in February, 1859, and as it existed October 18, 1902; that said land was formed of loose, sandy loam, bottom land, a sediment of the nature of Ollason Island; that said Carmel river is and always has been an unnavigable mountain stream, having an abrupt descent to the ocean, and during the summer months carries very little water and is sometimes entirely dry, while during the winter months of each year it is a torrential stream, carrying a large volume of water, and changes its channel to some extent. It is thus apparent that during a period of practically forty years the change has been sufficient to form or expose a strip of land containing ten acres only. The statement that ''during the winter months of each year it is a torrential stream, carrying a large volume of water, and changes its channel to some extent,'' suggests the idea that the change each year is but little; at any rate that it is not great. The fact that the land is a loose, sandy loam, and is a sediment, and that the channel of the river has changed each year to some extent, so that in forty-three years a strip of land containing ten acres has been formed along the original boundary of plaintiffs' land, suggest at least the probability that the channel of the river

has been gradually changed by the slow, gradual and imperceptible deposit of sedimentary matter by the natural action of the river and the waters thereof. Especially is this so in the absence of any word of evidence that there had been any sudden change in the channel of the river, or in the land bordering thereon.

Now, with these undisputed facts in evidence, the court could, upon a view of the premises, not only verify the evidence as to the character of the land in dispute as to being a sedimentary, sandy loam, but could observe the slope of the land from the original boundary of plaintiffs' land to the river, and the character and relative age of the brush or other vegetation upon the land, and any other characteristics tending to throw light upon the manner of its formation. From such facts, in connection with the length of time, forty-three years, that it has taken the river to change its channel to the extent that it has, and that it has changed its channel to some extent each year, the court might reasonably conclude that the land in dispute has been formed by natural causes, by imperceptible degrees, by the accumulation of materials, and by the recession of the river.

The judgment is affirmed.

Harrison, P. J., and Cooper, J., concur.