The State of West Virginia by the State Road
Commission *v.* C. Sanders *et al.*

(No. 9326)

Submitted September 29, 1942. Decided December 1, 1942.

*Mullins & Hall,* for plaintiff in error.
*William S. Wysong,* Attorney General, *Kenneth E. Hines,* Assistant Attorney General, and *Arden Trickett,* for defendant in error.

Kenna, Judge:

In this condemnation proceeding from the Circuit Court of Boone County no land of the defendants, C. Sanders and Elizabeth Sanders, his wife, was taken, its purpose having been to ascertain the amount necessary to com-

pensate defendants for damages sustained by their property on Main Street in Madison by broadening the hard surface and regrading Route 119. To the report of the commissioners ascertaining the damage the landowners excepted, the case was thereafter submitted to a jury, its verdict of fifteen hundred dollars was set aside by the circuit court, and upon the petition of the landowners to reverse the finding of the circuit judge, reinstate the verdict and remand with direction to enter judgment upon the verdict, this Court awarded a writ of error.

The position taken by the plaintiffs in error is that the clear preponderance of the testimony sustained the verdict of the jury, and that it therefore constituted prejudicial error for the circuit court to set it aside. To meet that contention, the defendant in error says that the verdict was plainly excessive due to the fact that evidence was permitted to go to the jury that was unrelated to the question of damage to the plaintiff's property and concerned only the alteration of the physical condition of land other than regrading, over which the State held a previously acquired easement, such as the removal of shade trees and stone steps which were part of a stairway ascending to the level of the Sanders property, in order to properly make use of the easement with which the State was vested, and that in so submitting the case to the jury the circuit court approved and gave several erroneous instructions, particularly instruction number C-c given by the court in lieu of instruction number C tendered by the State, and informing the jury that they might include in their verdict a sum sufficient to reconstruct certain steps from the level of the right-of-way to the level of the Sanders lot, located entirely upon the land over which the State held a preacquired easement.

In order to state his reasons for setting aside the verdict, the circuit judge prepared a written opinion which is made a part of the record, which, among other reasons assigned, makes it plain that the court was influenced by what he had learned upon viewing the property with the jury which caused him to realize what should have been the observation and knowledge of the jury as well con-

cerning the value of the property affected, and the extent to which it had been damaged by the regrading of the highway located at that point entirely upon the State's easement, although that information might run counter to the plain preponderance of the testimony which properly became a part of the record.

U. S. Highway Number 119 passes through Madison on Main Street, and facing south toward Logan the Sanders property, upon which there is a six-room frame dwelling, lies on the left of the street over which the highway runs. The front line of the Sanders property is above the road grade, and not being level, the difference in height varies so that about half its frontage is supported by a retaining wall, while on the south there was a slope from the property line to what may be termed the original hard surface. When the hard surface was broadened and the road regraded, its center line was raised two inches at the north and eight inches at the south corner of the Sanders lot, and in broadening the hard surface, the stone steps that intersected the retaining wall were removed to the line of the right-of-way, while the slope at the south within the right-of-way was removed to the level of the hard surface. As has been said, in putting the broadening project into effect, a shade tree that stood upon the State's right-of-way was removed.

In instruction number C-c the trial judge told the jury that it might allow sufficient damages to reconstruct the stone steps located entirely upon the State's right-of-way that had been removed in the widening of the hard surface. This, we believe, was clearly erroneous. We think that so long as an easement is legitimately used to carry out a known purpose for which it was acquired, without resultant physical damage to the abutting property, that there is no right within the boundary line of the easement itself, not specifically reserved and not acquired by long user, for the destruction of which the owner of the easement is legally responsible. Since there was no reserved right in the owner of the abutting property shown in this record, and since there cannot be a right acquired by adverse possession against the State, such use of the stone

steps as was made by the occupants of the Sanders property could have been only a permissive use, the withdrawal of which, no matter how great the resultant inconvenience and depletion of sale attractiveness, could in no wise legally affect the value of the servient property. *Jones* v. *City of Clarksburg,* 84 W. Va. 257, 262, 99 S. E. 484. The same principle is, of course, controlling in considering the removal of shade trees within the boundary of the State's easement. The State's right was acquired for a definite purpose which extended to all of the land within the area over which the easement passed. We are not here concerned with the value of that right as originally acquired, and it must now be assumed that in acquiring title to an easement, a grant from the property owner to the State, whether made voluntarily or as a result of a condemnation proceeding, took into account the immediate and future use for which the right-of-way was intended.

Based upon what has already been said, we are of the opinion that the trial court was justified in setting aside the verdict due to the fact that instruction number C-c contained an erroneous statement of the law, but that the trial court's written opinion is incorrect in basing that holding in part upon the knowledge the court had derived from viewing the premises, or otherwise than by evidence which was made a part of the record.

There are two separate and distinct theories concerning the manner in which the courts should permit a view to operate on the minds of the members of a jury, the first restricting its effect to the development of facts established by other evidence properly a part of the record, and the second treating it as a possible means of disclosing to the jury facts which, standing alone, constitute proof not of record. The case before us, we think, is an illustration of the outcome of a rule that bases a verdict in varying degrees upon evidence not appearing of record. We think it quite evident that the difference in the rules, in a practical sense, alters the jury's method of approach very little, if at all. However, treating the re-

sult of a view as independent evidence undoubtedly greatly enlarges the discretion of the trial judge.

In attempting to discuss any settled rule regarding the effect of a jury's view, we are fully conscious of the fact that the elements involved in the abstract to some extent fail to harmonize with their actual effect in practice. What a jury observes upon a view, as well as that of which the trial judge himself then becomes conscious, does not become a part of the record, and it is contended by those favoring the ancillary rule that, for that reason, its operation should be restricted and should not extend beyond permitting its effect to elucidate and explain evidence which is or can be made a part of the record. Otherwise, it is asserted, the effect of a view would permit the jury to consider many irrelevant and improper matters. Of course, such matters, if observable, will come to the knowledge of its members and the effect cannot be entirely wiped out. Therefore, it cannot be said in strict logic that the effect of a view can, by the court, be limited in a manner that actually restricts its effect to the evidence appearing of record. Under that rule, the view is by no means a perfect instrument, and cannot so operate as long as human concepts are based upon the perceptions of the human senses. On the other hand, we must not lose sight of the fact that, in theory at least, juries and courts do not necessarily consider the actual facts affecting the controversies submitted to them. In both law and chancery they pass only upon the facts which can be shown to exist under the rules of evidence properly applied, such as what evidence is relevant, the hearsay rule, *res gestae,* etc. The rules of evidence are completely ignored when the view of a jury is regarded by it and the court as admissible evidence for all purposes. The effect of that rule would be to practically dispense with the review of a jury's verdict in condemnation proceedings, and in many other instances, since it would be impossible to determine to what extent and in what manner the view affected the verdict.

We have attempted to refer to the outline of the reasoning of the courts in this country giving rise to a marked,

and numerically almost equal, difference of opinion upon this question. In fact, some of the courts of last resort have altered their viewpoint as is illustrated by the reasoning of the Supreme Court of California in *Wright* v. *Carpenter,* 49 Cal. 607; *Hatton* v. *Greig,* 4 Cal. App. 537, 88 P. 592, and *People* v. *Milner,* 122 Cal. 171, 54 P. 833. See also Jones on Evidence (2d Ed.), Vol. 3, p. 2559. There is a similar lack of harmony in our cases which we think should be commented upon.

The first West Virginia case dealing with the effect of a view seems to be that of *Fox* v. *Baltimore & Ohio Railroad Co.,* 34 W. Va. 466, 12 S. E. 757, where, in an action brought for the purpose of recovering damages due to the construction of a railroad upon the street upon which the plaintiff's dwelling fronted, it was held not to be erroneous to decline an instruction in effect telling the jury to utterly disregard all impressions they received from a view of the premises. Judge Lucas, speaking for the Court, had this to say:

> "The modification of the fourteenth, and the rejection of the fifteenth, involve the consideration of our statutes permitting the jury at their own request, or on motion of either party, to inspect the premises in dispute. The object of such view must be to acquaint the jury with the situation of the premises, and the location of the property, so that they may better understand the evidence, and apply it to the local surroundings of the case. To instruct them to disregard everything they saw, and every impression they received from the view, would be to mislead them, because it is apparent that the view would be absolutely useless, and would not conduce to a 'just decision', if both sight and apprehension were to be closed against the results naturally to be derived from an inspection of the premises. Code 1887, c. 116, s. 30; *Baltimore & O. R. Co.* v. *Woods,* 14 Gratt. 471."

It will be noted that in this utterance this Court indicated that the effect of a view is to be limited to its secondary relationship to the evidence properly introduced in the case on trial.

*State* v. *Henry,* 51 W. Va. 283, 41 S. E. 439, was a murder case in which the trial court, after the jury had viewed the scene of the crime, did not instruct them not to consider *as evidence* anything they saw at the view. While this Court held that if it were the duty of the trial judge to so instruct the jury, a compliance with that duty should be presumed in the absence of a showing to the contrary, it discussed the nature of the instruction as well, and indicated, citing and quoting the *Fox* case, that a jury should not be instructed to disregard the effect of a view, the opinion failing to distinguish the instruction under consideration which was to disregard their observations on the view *as evidence,* from that offered in the *Fox* case which was to disregard it entirely.

In the case of *Guyandotte Valley Railroad Co.* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785, this Court plainly dealt with the knowledge gained by viewing the premises, the case being a condemnation proceeding, as evidence, stating on page 430: "On the question of value, the jury may rest a verdict largely upon their own knowledge derived from a view of the premises."

*State* v. *McCausland,* 82 W. Va. 525, 96 S. E. 938, was a murder case in which the jury viewed the scene of the killing and while there conducted an experiment in the absence of the accused. The verdict of manslaughter was set aside due to the taking of evidence in that manner, the opinion stating that information gained upon a view by demonstration is to be regarded as evidence. Since it was unnecessary in the *McCausland* case to distinguish between primary and ancillary evidence, it is not directly helpful although the opinion contains a general discussion of value.

In the matter of *Clay County Court* v. *Adams,* 109 W. Va. 421, 155 S. E. 174, this Court held that where the jury had viewed the premises in a condemnation proceeding, the lack of evidence concerning the difference in value of the residue of the land immediately before and after, did not constitute error, stating that peculiar weight attaches to a verdict based partially upon a view of the premises.

In the case of *C. & O. Railway Co.* v. *Allen,* 113 W. Va.

691, 169 S. E. 610, this Court favored the rule that a view of a jury is intended to operate only in an ancillary way upon other evidence properly admitted, using the following language and, unfortunately, not referring to the previous cases not in accord:

"The jury viewed the premises in question. We are aware that this Court usually accords especial weight to verdicts in such cases. We cannot assume that the jury consisted of experienced contractors or competent real estate salesmen. Besides, the jury is not a mere enlarged set of commissioners who may rely on their own notions entirely. The very appeal from the award of the commissioners is for the purpose of having the case tried according to the law and the evidence of witnesses, and under the supervision of the court. The statute does not contemplate converting the jurors into 'silent witnesses', who, in the absence of substantial evidence, may supply the same from their own impressions and deductions, the accuracy of which is not tested by cross-examination and the relevancy of which is not approved by the court. The object of the jury view is 'to acquaint the jury with the situation of the premises and the location of the property, so that *they may better understand the evidence and apply it to the local surroundings of the case.' Fox* v. *Rr. Co.,* 34 W. Va. 466, 479-480, 12 S. E. 757, 762. They may properly consider what they observe which is ancillary to the record evidence. *State* v. *McCausland,* 82 W. Va. 525, 96 S. E. 938. But their view is not for the purpose of providing essential evidence *dehors* the record. 'If the rule were otherwise,' said the Supreme Court of California in *Wright* v. *Carpenter,* 49 Cal. 607, 610, 'the jury might base its verdict wholly on its own inspection of the premises, regardless of an overwhelming weight of evidence to the contrary, and the losing party would be without a remedy by motion for a new trial.' "

In the case of *Thorn* v. *Addison Bros. & Smith,* 119 W. Va. 479, 194 S. E. 771, a death by wrongful act proceeding, this Court clearly adhered to the rule that what-

ever knowledge is gained by a jury resulting from a view of the premises is to be used and applied only in so far as it throws light upon the record evidence. Certainly, the result of a view should not be considered as opposing, contradicting and overcoming a decidedly clear preponderance with nothing of record to justify that course.

In the case at bar the court also declined to give instruction D tendered on behalf of the State, which reads as follows: "The Court instructs the jury that before the defendants are entitled to damages from the change in the grade of the street, it must be shown that there was a diminution in the fair market value of the property due to the change in grade of the street." Leaving out the word "market", under the decided West Virginia cases, this instruction, considered in the abstract, states a maintainable principle (*Peddicord* v. *County Court,* 121 W. Va. 270, 3 S. E. 2d 222), but we believe that if it was the intention to rest it upon a showing of market value before the damage had occurred, subtracting therefrom the fair market price immediately following the damage, and reaching the actual diminution in value in that way only, while in strict logical theory it might be said to be sound, from the standpoint of its workable application, its result in practice would lead to many injustices, particularly in cases where damage alone is involved and there is no taking. A person whose property has been actually damaged is entitled to just compensation to be arrived at by the finding of a jury, no matter how slight that actual damage may have been. To rest that damage upon market value immediately before and immediately after, conceding that there is such a thing as the market price of land which cannot be duplicated, would render our constitutional provision almost meaningless to people owning undesirable property or property that is not salable, or to people of small means. On the other hand, proof of market value prior to the damage could rightly be regarded as a necessary showing, provided that that value could be treated as reduced to the extent of the actual damage. In addition, the owner, if he could show the market value before and after, should be permitted to make that show-

ing, but that, we think, should not be regarded as the only way to determine the damage done. Certainly, a damage that would cost only twenty-five dollars to fully remedy would have no effect upon the market price or value of property worth a thousand times that amount, and yet it cannot be doubted that the owner should be entitled to recover the cost of restoration. We are of the opinion that the instruction by reason of its incompleteness was misleading and therefore properly refused. Attention is directed to the fact that the instruction under consideration is dealing with damage caused by a change in grade, not with the consequence of broadening the hard surface within a right-of-way previously acquired by the State for road purposes.

The question of lateral support apparently does not arise, it not having been treated as an element of damages.

For the foregoing reasons, the judgment of the Circuit Court of Boone County is affirmed and the case remanded.

*Affirmed.*