PER CURIAM:
Claimants brought this action for damage to real estate located in Mingo County which property is adjacent to County Route 1, commonly referred to as East Fork of Twelve Pole Road. Damage has occurred to claimants’ property as the result of a drain placed beneath East Fork of Twelve Pole Road in 1976 at which time claimants gave respondent an easement for drainage across their property. As a result of the water flowing from the culvert installed by respondent beneath East Fork of Twelve Pole Road, claimants have had water flowing onto their property such that it is now unsuitable for the purposes for which claimants wish to use the property. Respondent is responsible for the maintenance of East Fork of Twelve Pole Road in Mingo County. The Court is of the opinion to deny this claim for the reasons set forth herein below.
Claimant Elizabeth Hobbs purchased three tracts of property adjacent to East Fork of Twelve Pole Road in Mingo County in 1975. In 2002, she deeded the property to her husband, claimant Bruce Hobbs. In 1976, claimants conveyed an easement to respondent for a drainage area to extend from East Fork of Twelve Pole Road across their property to the East Fork of Twelve Pole Creek. The permanent *301 easement was described as being fifteen feet in width and extending from the road across claimants’ property to the creek. At that time, respondent installed a culvert beneath the East Fork of Twelve Pole Road to provide for drainage of surface water from the hillside above the road which had been accumulating on the surface of the road and creating problems for the traveling public. At that time this was a dirt road and muddy conditions were not uncommon in this area of East Fork of Twelve Pole Road. Over the years claimants noticed that the water flowing from the road through the culvert covered more than the fifteen feet width of the permanent easement. The approximate distance from the end of the culvert beneath East Fork of Twelve Pole Road through claimant’s property to the creek is 70 feet. The property near this area has experienced an excessive amount of water which has resulted in a pooling of the water on claimants’ property causing swampy conditions. Claimants contend that they are unable to use their property for any purpose while these conditions exist. Claimants desire to use this tract of land for a mobile home park but are unable to do so while the present water problems exist. Claimants obtained an estimate in the amount of $9,800.00 which represents the cost of placing culvert pipe from the road to the creek to contain the water across the right of way granted in the permanent easement
Respondent asserts that its responsibility for the drainage of the water through the culvert beneath East Fork of Twelve Pole Road ends at the end of the culvert pipe where it empties onto claimants’ property. The permanent easement was for the construction of the pipe only and not for the provision of any structure across claimants’ property. Therefore, respondent is not liable for any damage to claimants’ property resulting from the water flowing across claimants’ property from the culvert beneath East Fork of Twelve Pole Road.
Claimant Bruce Hobbs testified about the property which is the subject matter in this claim. He purchased the property which is composed of four tracts on both sides ofEastFork of Twelve Pole Road or County Route 1 for his wife in 1975. He farmed the land for two years as it had been farmed by the previous owner. The top soil was in good condition and his farming efforts were successful. In 2002, his wife deeded the property to him in its entirety. He and his wife signed the permanent easement agreement with respondent in 1976 or shortly after purchasing the four tracts of land. East Fork of Twelve Pole Road at that time was not a paved road and water accumulated on the surface resulting in difficulty for travelers on the road. The culvert installed beneath East Fork of Twelve Pole Road allowed water to empty out onto claimants’ property and then flow to Twelve Pole Creek which was on the other side of claimants’ property. Mr. Hobbs first noticed a problem with water on his property in 2002. Mr. Hobbs described the flow of water across the easement and how it has now created problems on his property as it flows from the culvert in excessive amounts which then ponds over an area approximately seventy-five feet from the easement boundary. This has rendered the property unusable as there is not only a pool of water up to seven to nine inches deep at times, but also the area stays in a swampy condition during most of the year.
Respondent asserts that it is not responsible for the maintenance of the permanent easement as this easement was for the construction of the culvert beneath East Fork of Twelve Pole Road. Once the culvert was installed, respondent had no further duty to claimants. The permanent easement agreement entered into by the parties does not provide for maintenance of the easement area on claimants’ property. *302 Terry Ooten, assistant supervisor for respondent in Mingo County, testified that respondent’s responsibility is to maintain the pipe which crosses beneath the road and that is the extent of its responsibility. In fact, he visited the property and he explained that the water flowing onto claimants’ property is flowing there because that is the natural drainage area for the hillside on the opposite side of East Fork of Twelve Pole Road. The water is flowing to the creek. lie also testified that the culvert beneath East Fork of Twelve Pole Road is thirty-six inches in diameter and its outlet end is on the side of the road to claimants’ property. He described East Fork of Twelve Pole Road as being a secondary road that is eighteen to twenty feet wide. The right of way is thirty feet or fifteen feet on either side of the center line. He stated that respondent maintains the ditches, the shoulders, and patches the road as needed. The area of the permanent easement is not maintained by respondent.
Photographs were submitted of the area by both parties. Various areas were pointed out by witnesses to demonstrate to the Court the portion of claimants’ property that has water flowing from the culvert onto the permanent easement area and standing on claimants’ property. Water flows into an area on claimants property approximately seventy-five feet from the area of the permanent easement. There is a heavy growth of trees and brush on the property. The culvert empties onto the easement area which is below the level of the culvert. Testimony from two witnesses, Elmer McCloud, a former owner of the property, and Jeffrey M arcum, a neighbor who took photographs for claimants, both testified that they observed a pool of water on claimants’ property and both witnesses testified that the water flowed from the culvert located beneath the road that empties onto the property. Mr. McCloud stated that he had not had any problems when he lived on the property because the drain pipe was not located beneath East Fork of Twelve Pole Road at that time.
The estimate submitted by claimants to establish the cost to remediate permanently the water problem was prepared by Joe Mullins who testified.that placing an elevated drain pipe the same size as the culvert across the permanent easement to the creek and covering the drain pipe with fill would take care of the water flowing onto claimants ’ property from the permanent easement area. His estimate, based upon using top soil from claimants’ property to cover the newly placed drain pipe, is in the amount of $9,800.00.
The general law with respect to easements provides that the dominant tenement, i.e., respondent in the instant claim, has a duty to maintain an easement, and he must so use his own privileges as not to do any unnecessary injury to the grantor, i.e., claimants herein. Armstrong v. Pinnacle Coal & Coke Co., 101 W.Va.15, 131 S.E. 712 (1926). In using the right the grantee must assume care. Hayes v. Aquia Marina, Inc., 243 Va. 255, 414 S.E. 2d 820 (1992). The law also provides that so long as an easement is legitimately used to carry out a known purpose for which it was acquired, without resultant damage to abutting property, there is no right within the boundary line of the easement itself not specifically reserved, and not legitimately acquired by the long user. State v. Sanders, 125 W. Va. 143, 23 S.E. 2d 113 (1942). Therefore, respondent in the instant claim would have a duty to use the permanent easement granted by claimants so as not to do any damage to that portion of the property outside the boundary of the permanent easement.
However, the Court in the instant claim also must examine the specific terms of the conveyance made by the claimants to respondent.
*303 A critical issue in this claim is whether the permanent easement granted by claimants to respondent on May 24, 1976, requires respondent to maintain the easement such that water flowing from the culvert beneath East Fork of Twelve Pole Road must be confined to and within the boundary of the permanent easement. The boundary of the permanent easement as described in the easement agreement appears to be approximately seventy feet in length to the creek and fifteen feet in width through claimants’ property. One of the paragraphs in the permanent easement provides as follows:
And for the consideration hereinbefore set forth the Grantor does hereby release Grantee from any and all damages that have been occasioned or that may be occasioned to the residue of the property of Grantor by reason of the construction to be performed on the above described easement and by reason of the construction and maintenance of Project No. 330-1-2. 60, and covenant further that the easement hereby granted is free of all liens and encumbrances. (Emphasis supplied.)
This paragraph in the easement agreement appears to release respondent from any responsibility for the maintenance of the area of the permanent easement which claimants conveyed to respondent in 1976. The Court does not have in evidence a full description of the project performed by respondent at that time. Thus, the Court must rely upon the language in the easement agreement. The language states very clearly and in unambiguous terms that respondent is released from “any and all damages that have been occasioned or that may be occasioned to the residue of the property ... by reason of the construction and maintenance of ProjectNo. 330-1-2. 60...” The Court is of the opinion that it is constrained by this language in the easement agreement to hold that respondent is not liable to claimants for the damage to their property caused by the flow of water from the culvert beneath East Fork of Twelve Pole Road. This does not mean that the claimants do not have a right to enter onto the property which is the subject matter of the easement agreement to perform that which may prevent damage to their property, i.e., the servient tenement. The Court is of the further opinion that claimants may enter onto the easement agreement to do that which maybe required to protect their property, such as placing a drainage ditch or a drainage system as described in their estimate, to alleviate the excess flow of water onto their property from the easement area. As long as the work performed does not affect the purpose for which the easement was granted to respondent, claimants may protect their property as necessary.
Thus, in accordance with the findings of fact and the conclusions of law as stated herein above, the Court is the opinion to and does deny this claim.
Claim disallowed.