[No. A082458. First Dist., Div. Four. Aug. 12, 1999.]

In re the Marriage of JENNIFER and JAMES DeROQUE.
JENNIFER DeROQUE, Appellant, v.
JAMES DeROQUE, Respondent;
MORRY WEXLER, Appellant.

**[Opinion certified for partial publication.*]**

*This opinion is certified for publication with the exception of parts II, III, and V.

COUNSEL

Ann F. Vandepol for Appellants.

Jayne Kelly de Lopez for Respondent.

OPINION

**POCHÉ, Acting P. J.**—Appeal from a child custody modification order.

The marriage between appellant Jennifer deRoque (appellant) and respondent James deRoque (respondent) lasted less than a year, but it did produce a son, Matthew. The marriage was dissolved in 1995. Pursuant to their stipulation, the parties were awarded joint legal custody of their son. Appellant subsequently moved for modification of custody and visitation. Respondent's "responsive declaration" (and supporting exhibits) included a number of unflattering allegations directed at the care and supervision of Matthew provided by appellant and her parents. Appellant's parents, Morry and

Joanne Wexler (the Wexlers), moved for an order joining them as parties in order to seek "guaranteed rights to visitation with Matthew" and also asking for "the striking of documents filed by respondent in which he makes false and defamatory allegations of neglectful care of Matthew" by the Wexlers.

Following an evidentiary hearing, the trial court made an order by which it: (1) denied the Wexlers' motions to strike the documents filed by respondent, and to award them fixed visitation rights and attorney fees, and (2) denied appellant's motion for changed custody. Separate notices of appeal were filed by Mr. Wexler and his daughter.

REVIEW

I

■ Most of Wexler's arguments are aimed at the denial of his motion to strike the materials respondent attached to his "responsive declaration." He still insists that the material is "false and irrelevant." He further contends that the court's statement of decision "provides no explanation as to the lack of a legal basis" for the ruling, and that the court abused its discretion by refusing to "accept oral testimony on the . . . motion." Finally, Wexler submits that "the court should have exercised its equitable powers on the claimants' behalf providing claimant injunctive relief calling for striking the documents or compelling respondent to issue a retraction." Respondent replies that the motion was correctly denied as untimely and "impermissible in family law proceedings."

We will first dispose of respondent's arguments. He first tells us there could be no ordinary motion to strike (presumably one made pursuant to Code of Civil Procedure sections 435 and 436) because the exclusive method for striking in family law proceedings is governed by rule 1229 of the California Rules of Court. Recognizing no inconsistency, he then turns around and claims the motion was untimely because it did not comply with the time limits that govern a motion to strike brought pursuant to the Code of Civil Procedure. There is nothing to indicate that the Wexlers' motion to strike was not correctly based on rule 1229; the trial court did not treat it as either illegitimate or untimely. We will do likewise.

The reason the court denied the Wexlers' motion was stated in its notice of intended decision: "Claimant's motion to strike is denied. The matter that the claimants seek to strike is simply contested factual matter, which they

allege to be inaccurate. This is not a proper basis for an order to strike." It is quite clear what was in the court's mind. The material the Wexlers find so objectionable was submitted by respondent to support his claim that the Wexlers' care of Matthew was less than perfect, and thus custody would be more appropriately given to respondent. This purpose was a proper objective, and the materials were relevant to it. Litigation is not conducted according to Marquess of Queensberry rules. Nasty and hurtful things are said, if not as a matter of course, at least with frequency.

The court's statement for denying the motion obviously does not satisfy Mr. Wexler, but it does satisfy the law. California Rules of Court, rule 1229 provides that a response which contains "any matter not specifically required by . . . rule 1282" governing responsive pleadings, may be stricken. Wexler has never pointed to any specific matter as unnecessary or improper with respect to what should be in a responsive pleading. When the trial court stated that "This is not a proper basis for an order to strike," it was in effect making this point, saying that Wexler had not identified any specific point of noncompliance that required exclusion.

As for the court refusing to "accept oral testimony on the . . . motion," we cannot condemn that decision as an abuse of discretion. When counsel for the Wexlers first requested "that we have testimony with Mr. and Mrs. Wexler," the court responded "Why?" When counsel stated, "We have information regarding the sequence of events," the court interjected "I thought that was in the declarations." Counsel conceded "It already is in the declarations," whereupon the court sensibly noted "Fine, then we don't need it twice." When counsel again raised the matter, stating that the Wexlers' motion to strike "can only be evaluated by a substantive evaluation of the contents of the items that we wish to have struck," respondent's counsel and the court pointed out that the Wexlers could testify "as to whether they're capable as grandparents." When counsel returned to the matter once again, requesting "clarification," she inquired "Is it your position . . . that over objections of the claimants you are not going to allow oral testimony or arguments on that motion?" The court replied "The law and motion matter. I see no reason for it. If there's something that's happening since the declarations were filed I suppose we can hear about that." Mr. Wexler subsequently testified about how he and Mrs. Wexler cared for Matthew "with great love and affection."[1] It thus appears that all the court did was decline to hear testimony that was repetitive of the declarations it already

[1]Mr. Wexler may find some satisfaction in the fact that any negative views respondent may have entertained at the start of trial were gone at its end. Respondent's counsel told the court in closing argument that "Matthew deRoque is a child who is truly blessed to have wonderful

had. Without an offer of proof concerning what testimony the Wexlers would have presented on their motion to strike, we can only assume that it would have been the same as subsequently occurred. Nothing in Mr. Wexler's brief points to any other conclusion. The fact that the Wexlers had nothing to offer after being provided an opportunity to present testimony about matters not already covered in the declarations leaves no basis for criticizing the court's ruling.

With respect to the argument that the trial court erroneously withheld injunctive relief, our response is twofold. First, it does not appear that the court was specifically asked to grant this remedy. Second, injunctions operate only with future effect; their purpose is not to punish acts already completed and not likely to be repeated. (E.g., *Parkinson Co.* v. *Bldg. Trades Council* (1908) 154 Cal. 581, 602 [98 P. 1027]; *Dawson* v. *East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1040 [34 Cal.Rptr.2d 108].) The Wexlers' distress was caused by the filing of respondent's declaration, and there is nothing to suggest respondent planned a recurrence.

In light of the foregoing, we find no defect in either the procedure or the substance of the denial of the motion to strike.

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

▋  Appellant Jennifer deRoque attacks the denial of her custody modification motion on a number of grounds. She contends it amounts to an abuse of discretion and does not have the support of substantial evidence and is contrary to the "overwhelming" weight of evidence. She further submits it was not accompanied with an adequate statement of reason and was the product of judicial bias and the legal error of misapprehending the burden of proof. The core of these arguments is that the trial court did not follow the recommendation of the sole expert, an "evaluator" selected jointly by the parties. As will be seen, there was good and sufficient reason for the court not to rubber-stamp the recommendation.

---

grandparents. . . . Mr. deRoque does not object to the Wexlers. He's pleased to have them as people to help with their [*sic*] son. I can't think of anybody who could do a better job. This kid is real lucky to have them . . . ."

  *See footnote, *ante*, page 1090.

The major point of contention was that Matthew's parents lived a good distance away from each other, and their constant exchanging of custody, on what appears to be almost a day-by-day basis, was producing considerable concern for possible adverse effects on Matthew. An additional complication was the unusual schedule respondent worked as a firefighter. The evaluator's recommendation appears evenhanded, but it had a hook buried in it—respondent's access would be effectively reduced if he lived outside a 30-minute driving radius of appellant's home.

The trial court stepped in with a fine-tuning of the visitation and custody schedule set up by the parties: "The child shall reside with petitioner/father during the four day period he is off work in every nine days and shall reside with respondent/mother during the balance of the time. . . . [¶] There does not appear to the court to be any reason to modify the time share arrangement (four days to dad and five days to mom in every nine days) that the parties agreed to just over a year ago. Both parties appear to be effective and committed parents. The difficulty of the current order is that the minor requires more stability in his schedule. The court's order will reduce the number of transfers of the child, will lengthen the time he is with each parent, and will require preschool each day. These changes will regularize the minor's schedule and reduce the contact between the parties, which will be of benefit to the minor. Although the court's order does not comply with the court's expert's recommendations, it does address itself to the problems found by the expert and should be of benefit to the minor."

This appears to be the essence of intelligent judging. Not willing to be a mere rubber-stamp for what the sole expert thought was best, the court came up with its own modification, one that would answer the difficulties shown by the parties' previous experience and identified by the expert. The record shows the problems. The court's order provides a solution. Together they constitute substantial evidence and defeat the claim of abused discretion. The court's order also establishes that the lodestar followed—what would serve Matthew's best interests—was the appropriate legal test. (E.g., *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37 [51 Cal.Rptr.2d 444, 913 P.2d 473].)

The argument regarding judicial bias draws our immediate attention. As framed by appellant, its premise is the court's "capricious" rejection of the expert's testimony and recommendation. As shown above, the court did reject the expert's recommendation regarding change of custody, but it obviously accepted a good portion of the expert's testimony concerning such matters as the hostility between the parties and the need to reduce the

amount of time Matthew spent being driven between parents. Even a cursory examination of the record shows that appellant illustrates her claim with a number of comments by the trial court. Upon examination, however, the comments are shown to have been heavily edited or ripped out of context.[2] The claim of judicial bias is utterly without merit.

As for appellant's claim that the court's statement of reasons did not comply with Family Code section 3082, assuming that that section was operative here,[3] the trial court did comply with it. The court's "Notice of Intended Decision" is notable for its plain language and the complete absence of legal terminology. The further absence of legal and factual discussion makes it a statement of reasons, not a statement of decision. (See *In re Marriage of Buser* (1987) 190 Cal.App.3d 639, 642-643 [235 Cal.Rptr. 785].) Moreover, we wish to note that the court's "Notice of Intended Decision" has been of considerable assistance in resolving these appeals. It reflects a practice that is to be encouraged, not condemned.

V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

[2] For example, appellant cites an objection by opposing counsel "[W]hat are we doing here?" and the trial court responding ("sarcastically" in her view) "That's a good question." The proper context is a rebarbative exchange between counsel (of which there were far too many during this proceeding). The "where are we going?" objection and the court's response is not, as appellant insists, proof "that the court considered the trial a waste of time and had possibly pre-judged the custody matter." All the court was doing was questioning the potential relevance of a line of questioning.

Similarly, on the second day of the two-day hearing, the court told counsel: "Unfortunately, this child has not played a big part of this hearing so far" a comment appellant reads as proof of "the astounding degree to which he discounted the[] testimony [of appellant and the expert] and to a large degree had prejudged the case." Again, the court's comment was made in the midst of an exchange between counsel about a document. The full context of the court's comment (made to appellant's counsel) was as follows: "Counsel, I can't make the record reflect anything because I've never seen the document and besides you're speaking about a triviality that happened two and a half years ago. Now, let's get on with what we can do to help this child. Unfortunately, this child has not played a big part of this hearing so far." Having scrutinized the record with some care, we can state with confidence that the court's remark was fair comment on the progress of the hearing to that point. The parties, and counsel, seemed more intent in scoring points off of each other than assisting the court in making a difficult decision on a sensitive subject. The court was merely reminding them of what was really important and really at issue.

[3] "When a request for joint custody is granted or denied, the court, upon the request of any party, shall state in its decision the reasons for granting or denying the request. A statement that joint physical custody is, or is not, in the best interest of the child is not sufficient to satisfy the requirements of this section." (Fam. Code, § 3082.)

*See footnote, *ante*, page 1090.

## DISPOSITION

The order is affirmed. All parties shall bear their respective costs of appeal.

Reardon, J., and Sepulveda, J., concurred.

On September 13, 1999, the opinion was modified to read as printed above.