Filed 9/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of C.D. and G.D. | 2d Civil No. B318718 (Super. Ct. No. D388847) (Ventura County) |
| C.D., Respondent, v. G.D., Appellant. | |

When issuing custody and visitation orders, a trial court's paramount concern is the best interests of the child. (Fam. Code,[1] § 3020, subd. (a).) To determine those interests, the court must consider whether the parent seeking custody or visitation has a history of abusing the child. (§ 3011, subd. (a)(2)(A)(i).) If there are sexual abuse allegations, the court may order an expert to evaluate those allegations. (§ 3118, subd. (a).) But such an evaluation is not the *only* evidence that can support a finding of

---

[1] Unlabeled statutory references are to the Family Code.

sexual abuse; rather, all "relevant, admissible evidence submitted by the parties" should be considered when determining whether a parent sexually abused a child. (§ 3044, subd. (e).)

G.D. (Father) appeals from the judgment approving the dissolution of his marriage to C.D. (Mother), granting her full custody of their minor daughters, and barring all visitation. Father contends the custody and visitation orders attached to the judgment should be vacated because the trial court did not order an evaluation into whether he sexually abused his daughters. We affirm.

FACTUAL AND PROCEDURAL HISTORY

*Pretrial events*

Father and Mother married in 2013. Their twin daughters, F.D. and S.D., were born four years later. By 2019, Mother began to suspect that Father was sexually abusing their daughters. The trial court dissolved the marriage the following year. It reserved the determination of custody and visitation issues for a future trial.

Prior to that trial, and pursuant to a stipulation between Father and Mother, the court appointed a private child custody evaluator to make "recommendations to the parties and the [trial court] regarding a parenting plan that provides for the needs and best interest[s] of the children." The evaluator noted that he had only been authorized to conduct a general custody evaluation pursuant to section 3111, not an evaluation of sexual abuse allegations pursuant to section 3118. He told Father and Mother that if a section 3118 evaluation "were desired then [it] would need to be ordered by the court." But "[n]either party requested [the evaluator] to expand the scope of the evaluation to include the components of a [section] 3118 evaluation." Instead, "rather

2

than pursue [such an] evaluation, [Mother and Father] stipulated to [F.D. and S.D.] participating in therapy."

Mother filed a trial brief on custody and visitation issues in July 2021. She also requested an order compelling Father to be deposed. The trial court granted Mother's request.

Father failed to appear for his court-ordered deposition. In response, the trial court sanctioned Father by prohibiting him from: (1) introducing evidence and testimony at trial, (2) cross-examining most witnesses, and (3) making objections on child custody and visitation issues. The only exception to these sanctions permitted Father to "cross-examine medical professionals, representatives of Child Protective Services[,] and representatives of law enforcement agencies." Father concedes these sanctions were "imminently reasonable."

*Trial*

*1. The "timeline" of Father's abuse*

Mother testified that she kept a timeline of her daughters' unusual behaviors. The timeline was admitted into evidence. The first entry is from May 2019, when F.D. and S.D. were not yet two years old. It states that while lying on a changing table S.D. "took her favor[ite] stuffed animal and [made it] repeatedly kiss[] her crotch." On the same day, as F.D. lay undressed on the changing table, she "point[ed] to her crotch and said boo boo."

A "particular[ly] significan[t]" incident occurred the following September. While getting undressed for a bath, S.D. grabbed F.D.'s throat with one hand and "spread her [own] crotch open" open with the other. S.D. then "started inserting her finger" and "tickling herself."

Another entry from the timeline states that S.D. came home from a visit with Father in January 2021 and told Mother

3

about the "open your tootie" game she played with Father.[2]  She got on her hands and knees in the bathtub, opened and closed her knees, and repeatedly said, "Open your tootie."  S.D. also told her therapist about the game.

The following April, F.D. said that Father told her to lie about "bottoms, tooties[,] and poop."  F.D. also said that she liked to touch Father's tootie, referring to his penis.

During a May therapy session, F.D. drew figures representing herself, Father, and S.D.  F.D. looked at the drawing and said, "[Father] touches my tootie.  He touches my tootie . . . [a]nd in the crack of my bottom.  He touches his tootie when he's touching my tootie."

### 2.  Testimony from F.D. and S.D.'s relatives

Mother's sister, C.M., and their mother, P.M., also testified at trial.  C.M. said she saw F.D. and S.D. exhibit inappropriate sexual behavior "more instances than [she could] count."  She also witnessed a "handful" of the incidents on Mother's timeline.

Among those was an incident from September 2019, during which S.D. stood by the bathtub, "pull[ed] apart her private parts" with one hand, and "us[ed] the other hand to touch herself."  C.M. tried to distract S.D., but S.D. then "proceeded to sit down and do the same thing" again.

In April 2021, S.D. described the "open your tootie" game to C.M.  She also demonstrated the game by opening and closing her legs while lying on her back.  S.D. said that Father had taught her the game.

P.M. testified that F.D. and S.D. spent a lot of time at her house.  She witnessed "some very inappropriate play with bath toys and also with each other at times."  It was a "regular

---

[2] F.D. and S.D. referred to vaginas as "tooties."

4

occurrence" for F.D. and S.D. to fondle themselves; they did it nearly "[e]very time they were undressed. Even if they got on the potty seat[] [t]hey would be touching themselves. Even their rear ends[.]" The fondling was "definitely" of a sexual nature.

### 3. Testimony from F.D. and S.D.'s therapist

F.D. and S.D.'s therapist testified that she started providing therapy to the girls when they were about two years old. She was retained to "get some clarity" about the reasons they "exhibit[ed] and display[ed] sexual behaviors" that were "outside the norm . . . for [such] young children."

The therapist said F.D.'s and S.D.'s behaviors were "absolutely outside the norm for this stage and age of development." She said that the girls disclosed that Father (and only Father) had touched them inappropriately. They also showed her the "tootie game."

When asked what could cause the sexual behaviors she had described, the therapist replied that either F.D. and S.D. had been "directly exposed through a molestation or touching by an adult or someone else[,] [o]r they've been exposed to pornography, sexual behavior in the home[,] or other hyperstimulating sexual stimuli. Those are the only—those are the only options." She also testified that while it was not unusual for children to masturbate, "[t]hese girls are different. They not only touch themselves but they touch each other. They open . . . their legs. They put things in their vagina[s]. They put things in their anus[es]. And so clearly they have a sophistication that . . . no young child[ren] should have."

### 4. Additional evidence

In January 2021, S.D. visited her pediatrician. S.D. told the pediatrician that Father would tell her to "open [her] tootie."

5

After returning from a visit with Father in July, F.D. said that her bottom hurt when she sat down and that there was blood when she wiped herself. The pediatrician told Mother to take F.D. to the emergency room if anything similar happened in the future.

A week later, after another visit with Father, F.D. told Mother that her bottom hurt the same as "last time." She said that Father had "put his finger inside [her] bottom and . . . told [her] it would make [her stomachache] feel better." He then put a toy inside her rectum. Mother took F.D. to the emergency room.

A sheriff's deputy spoke with F.D. at the hospital. F.D. told the deputy "that [Father] had put his finger in her anus and that it caused pain to her bottom." She also said that Father had "placed a toy there[,] telling her that it would help her feel better." Father stopped when F.D. said that she did not like it. Her anus "still hurt" while she spoke with the deputy.

*The trial court's decision*

In its statement of decision, the trial court found F.D.'s and S.D.'s statements reliable and credible. The court also credited the statements the girls made to their therapist, S.D.'s statements to her pediatrician, and F.D.'s statements to the sheriff's deputy. It found Mother's timeline of events reliable, and credited the testimony of Mother, C.M., and P.M.

Based on this evidence, the trial court concluded that Father "abused the minor children and perpetrated domestic violence against them from May 8, 2019[,] through August 13, 2021, by . . . [¶] [t]ouching them in a sexual manner on numerous occasions during his supervised and unsupervised custodial time. These acts included but are not limited to [Father] inserting his fingers and objects into their bodies both vaginally and anally."

6

The court granted Mother full custody of F.D. and S.D., and ordered no visitation for Father. It also entered a restraining order preventing Father from contacting Mother, F.D., or S.D. for five years.

## DISCUSSION

Father contends the custody and visitation orders should be vacated because there was insufficient evidence that he sexually abused F.D. and S.D. To him, only an evaluation conducted pursuant to section 3118 could provide the evidentiary basis necessary to permit the trial court to find that he abused his daughters.

There are several problems with Father's contentions. First, the trial court's decision not to order a section 3118 evaluation was made, at least in part, at Father's behest. Prior to trial, the child custody evaluator notified Father that no section 3118 evaluation had been ordered in the case, and that if he wanted such an evaluation he would need to ask the court to order it. Father did not do so. Instead, he stipulated that the evaluation was unnecessary because he and Mother had agreed to send their daughters to therapy. He cannot now complain that the court below erred by doing precisely what he stipulated should be done. (See *People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 49 [party cannot complain of error made at their request].)

Second, even if Father had not invited any error, he cannot show prejudice. (Cal. Const., art. VI, § 13.; *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107-1108 [appellant must show prejudicial error to obtain reversal].) As Father concedes, the trial court imposed "imminently reasonable" sanctions on him for refusing to be deposed. Among those sanctions was one prohibiting him from

7

proffering any evidence at the trial on custody and visitation issues—a sanction that would have prevented him from offering into evidence a favorable section 3118 evaluation had one been prepared. Because he does not challenge that sanction, he cannot show that the lack of a section 3118 evaluation resulted in a miscarriage of justice.

Third, no section 3118 evaluation was required here. If a trial court appoints a child custody evaluator *and* "determines that there is a serious allegation of child sexual abuse," it must order a section 3118 evaluation. (§ 3118, subd. (a).) The court below did not determine there had been a serious allegation of child sexual abuse. It was thus not required to order a section 3118 evaluation.

Father counters that the trial court *should have* determined there had been a serious allegation of child sexual abuse because of the reports F.D., S.D., and Mother made to the girls' therapist, their pediatrician, and the sheriff's deputy. (See § 3118, subd. (a) [defining "serious allegation of child sexual abuse" as abuse reported to law enforcement, child welfare services, and other mandatory reporters].) But " ' " ' "[t]he law casts upon [a] party the duty of looking after [their] legal rights and of calling the judge's attention to any infringement of them." ' " ' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) Had Father wanted the court to make a serious sexual abuse determination—a determination that would have triggered a section 3118 evaluation—he was required to ask it to do so. Because he did not, his complaint that the court erred by failing to order the evaluation is forfeited. (*Stowell*, at p. 1114.)

Fourth, even if there was no forfeiture, we would decline Father's invitation to adopt a rule that *only* a section 3118

8

evaluation can provide the evidentiary basis for finding that a parent sexually abused a young child. Section 3118 requires a trial court to order an evaluation when it appoints a child custody evaluator and determines there has been a serious allegation of child sexual abuse. (§ 3118, subd. (a).) But section 3118 also grants a court the discretion to order an evaluation when abuse allegations arise in other contexts. (§ 3118, subd. (a) [court may order evaluation "[w]hen an allegation of child abuse arises in any other circumstances"].) Were we to adopt Father's proposed rule, we would transform that discretionary duty into a mandatory one whenever a custody and visitation proceeding involves alleged abuse of young children. Such judicial rewriting of statutes is not permitted. (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 366.)

Father's proposed rule also conflicts with other provisions of the Family Code. It would require a trial court to ignore the Code's requirement to "look to *all the circumstances* bearing on the best interest[s] of the . . . child" when making initial custody and visitation determinations. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32.) It would also render null the Code's provision permitting independent corroboration of sexual abuse allegations. (See § 3011, subd. (a)(2)(B).) And it would conflict with the Code's prohibition against finding that a parent committed domestic violence[3] based "solely on conclusions reached by a child custody evaluator" (§ 3044, subd. (e)), in turn limiting the parent's ability to rebut the allegations against them (cf. *id.*, subd. (a) [alleged abuser can rebut presumption that custody would not be in child's best interests]). In our view, that

_____

[3] A parent who sexually assaults a child commits domestic violence. (§ 3044, subd. (c).)

9

is not the law.  (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 27 [a finding that a parent committed abuse " 'does not limit the evidence cognizable by the court' "]; see also *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1057 [discussing types of evidence that may be introduced to rebut presumption].)

Father's proposed rule similarly conflicts with caselaw and statutes outside the Family Code.  It would upend longstanding California law that "[a] trial court is not required to accept . . . expert opinion at face value" (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1345), a principle that permits the court to deviate from an expert's custody and visitation recommendations (see, e.g., *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 436) instead of acting as a "mere rubber-stamp" for what the expert thinks best (*In re Marriage of deRoque* (1999) 74 Cal.App.4th 1090, 1096).  It could also require a court to discount testimony from a young abuse victim—even though the law makes " 'no distinction . . . between the competence of young children and that of other witnesses.' "  (*People v. Jones* (1990) 51 Cal.3d 294, 315; see also Evid. Code, § 700 ["every person, *irrespective of age*, is qualified to be a witness" (italics added)].)

Rather than adopting Father's proposed rule, we conclude that a trial court should "consider any relevant, admissible evidence submitted by the parties" when determining whether a parent has sexually abused a child and making appropriate custody and visitation orders.  (§ 3044, subd. (e).)  The court below did just that.  And that evidence was more than sufficient to uphold its finding that Father sexually abused F.D. and S.D. (Cf. *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497 [factual findings underlying custody and visitation orders reviewed for substantial evidence].)

10

The timeline admitted into evidence at the trial on custody and visitation issues described dozens of instances of F.D. and S.D. behaving unusually, often after visiting Father: rubbing stuffed animals on their vaginas, complaining of pain to their vaginas and anuses, incidents of masturbation, details of the "open your tootie" game Father allegedly forced the girls to play, and allegations that Father touched their vaginas while touching his penis.  Mother, C.M., and P.M. all witnessed these behaviors.  So did the girls' therapist, who deemed them "outside the norm" for such young children and testified that they could only be learned by being exposed to molestation, pornography, or some other sexual stimuli.  The girls' pediatrician and a sheriff's deputy were indirect witnesses, with S.D. telling the former about the "open your tootie" game and F.D. telling the latter that Father had inserted a finger into her anus.

The trial court found all this evidence reliable and credible.  And because Father could not object to it, the evidence can properly be considered in support of the judgment.  (*People ex rel. Department of Public Works v. Alexander* (1963) 212 Cal.App.2d 84, 98.)  So can F.D.'s and S.D.'s statements.  (*People v. Harlan* (1990) 222 Cal.App.3d 439, 451-454.)  Substantial evidence supports the court's custody and visitation orders.

11

## DISPOSITION

The judgment, including the attached orders granting C.D. full custody of F.D. and S.D. and barring G.D. from all visitation, is affirmed.  Respondent C.D. shall recover her costs on appeal.

CERTIFIED FOR PUBLICATION.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.


12

Jeffrey G. Bennett, Judge

Superior Court County of Ventura

_____


Taylor, McCord, Praver & Cherry, Patrick G. Cherry;
Ventura Coast Law and Douglas K. Goldwater for Appellant.
Law Offices of Jeffrey A. Slott, Jeffrey A. Slott; The Law
Office of Greg May and Greg May for Respondent.